## THEODORE W. SMITH v. JOHN S. FOSTER.

One, who receives property upon condition that it is to belong to him, provided he pays for it a certain sum by a time specified, acquires no attachable interest in the property by paying a portion, only, of the purchase money.

And if a third person purchase the interest of such conditional vendor and vendee in the property, paying each for his proportion, according to the amount paid under the contract, and then leave the property in the possession of such conditional vendee, the property is not subject to attachment by the creditors of the person thus in possession, unless fraud in fact is proved.

TROVER for a horse. Plea, the general issue, and trial by jury, ROYCE, J., presiding. The defendant had attached the horse in question, in due course of law, as the property of one Daniel Blackstone.

On trial it appeared, that on the eighth day of May, 1843, Asa Aldis, who was then the owner of the horse in question, contracted to sell the horse to Blackstone for forty dollars, and Blackstone

paid eighteen dollars towards the price, and an agreement in writing was entered into between them, by the terms of which the horse was to be kept and used prudently by Blackstone and returned to Aldis on the first day of May, 1844, subject to a condition, that he was to become the property of Blackstone, if he paid to Aldis the balance of the price, being twenty two dollars, on or before the first day of May, 1844. It farther appeared, that it was understood in the family of Aldis, that the horse was the property of his daughter, and that the trade with Blackstone was for her benefit. On the ninth day of September, 1843, the plaintiff purchased of the daughter of Aldis her interest in the horse, and paid her therefor twenty two dollars, and on the same day the plaintiff purchased of Blackstone his interest in the horse. In the trade between the plaintiff and Blackstone the horse was valued at sixty dollars, and the plaintiff was to allow to Blackstone, for his interest in the horse, thirty eight dollars on claims which the plaintiff held against him. The plaintiff authorised Blackstone to sell the horse, if an opportunity offered, for sixty five dollars, or more, saying that he would do what was right with Blackstone as to any such profit made in the sale. The horse remained in the possession of Blackstone from the time of the contract with Aldis, until he was attached by the defendant, sometime after the sale to the plaintiff, and was used by Blackstone; and it appeared that he was under no contract to account to the plaintiff for the use.

The defendant claimed, on these facts, that by the plaintiff's purchase the conditional sale between Aldis and Blackstone became inoperative, and that, as the plaintiff had recognised the interest of Blackstone in the horse, and had purchased his interest, the leaving the horse in his possession was a fraud in law, and the horse was liable to be attached by his creditors. But the court instructed the jury, that, if there was no fraud in fact in the transactions, the plaintiff was entitled to recover the value of the horse. Verdict for plaintiff. Exceptions by defendant.

*J. & J. G. Smith* and *Hunt & Nutting* for defendant.

1. The plaintiff was not entitled to recover, without showing that he was in fact the owner of the horse in question. It appears from the case, that Asa Aldis was the owner of the horse on the

eighth day of May, 1843, when he entered into the contract with Blackstone; and it makes no difference, that it was *understood* in the family of Aldis, that the horse belonged to his daughter, and that the trade was made for her benefit, inasmuch as their was no evidence, that she was ever in fact the *owner* of the horse. The plaintiff, then, gained no title to the horse by his contract with the daughter of Aldis; if he ever acquired any title, it was from Blackstone,—and there having been no change of possession, he acquired no title, as against the attaching creditors of Blackstone.

2. It appears by the case, that Blackstone had an interest in the horse to the amount of thirty eight dollars. That was an interest which Blackstone could sell, or which might have been attached by his creditors; and the purchaser, or attaching creditor, could have perfected a title to the horse by paying Aldis the twenty two dollars at the time and in the manner specified in the contract between Aldis and Blackstone.

3. But if Miss Aldis had a disposable *equitable* interest in the horse, the defendant contends, that the payment to her of the twenty two dollars could not operate to transfer to the plaintiff the *legal title* to the horse. It might, in equity, operate to extinguish the claim against Blackstone upon the contract, and if so, it would vest in him an absolute and unconditional title to the horse.

*Smalley, Adams & Hoyt* for plaintiff.

The sale of the horse by Aldis to Blackstone was conditional, and, as the condition was never performed by Blackstone, the general property in the horse never passed to him. Consequently, he never had any interest in the horse, liable to be attached at the suit of his creditors. *West v. Bolton,* 4 Vt. 558. *Bigelow v. Huntley,* 8 Vt. 151.

The opinion of the court was delivered by

BENNETT, J. It is quite clear, that Blackstone never had such an interest in the horse, as could be attached. Asa Aldis, who was the owner of the horse in May, 1843, then delivered him to Blackstone, who was to keep and use him until May 1, 1844, when he was to return him to Aldis. The contract between them, however, provided, that if Blackstone paid Aldis twenty two dollars on or

before the first day of May, 1844, the latter would sell and transfer the horse to the former. It appears that the sum to be paid for the horse was forty dollars, and that Blackstone paid eighteen dollars at the time the contract was made. In September, 1843, Blackstone sold all his interest in the contract to the present plaintiff; and, as it appears probable from the case that Aldis was acting in this business as the agent of his daughter, who really owned the horse, the plaintiff, on the same day, purchased of Miss Aldis her interest in the horse, then estimated at twenty two dollars.

The property in the horse did not pass to Blackstone by force of his contract with Aldis, in May, 1843. If it then was in Aldis, it still remained in him, notwithstanding Blackstone had the possession and an *equitable* interest in a portion of the horse, arising from his having paid a part of the *consideration money*. Though Blackstone sold his interest in the horse to the plaintiff, yet he retained the horse in his possession ; but it was in the character of an agent and servant of the plaintiff, and in law his possession was the possession of the plaintiff; and this would enable the plaintiff to maintain this action against a stranger,—which is the position of the defendant as respects the plaintiff. Besides, on the same day the plaintiff bought the remaining interest in the horse of Miss Aldis. If she in fact owned the horse, or was empowered by her father to sell him, the plaintiff became the absolute owner of the entire interest in the horse. No question appears to have been raised, on the trial, as to the authority of Miss Aldis to dispose of the horse, though there is difficulty in finding, from the bill of exceptions, that there was legal evidence, that she had such right. Probably there may be some omission in this particular.

The court were correct in charging the jury, that, unless there was fraud in fact, the plaintiff was entitled to recover. The plaintiff's possession, through his agent and servant, was a sufficient title; and as Blackstone never had any attachable interest in the horse, the principle of *fraud in law* will not apply.

Judgment of the county court affirmed.