## NOAH MARTIN *v.* EAMES & BELLOWS.

### *Book Account. Conditional Sale.*

Where property is sold conditionally, and payments are made for it by way of services, the services may be charged on book to await their subsequent application; and if the property so sold is received back by the vendor, the vendee may recover for his services in an action on book, if no application has been made of the services. It was so held in *Stone* v. *Pulsifer*, 16 Vt. 428.

And where the defendants sold conditionally a yoke of oxen to the plaintiff, the oxen to be the property of the defendants until paid for, and by the terms of the trade plaintiff was to pay for the oxen by cutting and drawing a quantity of cord wood, and before plaintiff had drawn all of the wood, he permitted the oxen to go into the hands of the defendants on a loan for a few days, and when plaintiff called for the oxen, the defendants refused to re-deliver them, unless the plaintiff would procure additional security for the payment of the price—*Held*—under these circumstances, that the refusal to re-deliver the oxen was a disaffirmance of the contract and an assertion of their right to the cattle, and that the plaintiff was entitled to recover for the wood delivered to defendants, no application having been made of the same.

After such demand and refusal to re-deliver the oxen, an attachment of the oxen as the property of the plaintiff, the vendee, cannot effect the case, as he had then no property or interest in the cattle that could be attached; such an attachment would, therefore, be a violation of the right of the defendants, the vendors.

Martin *v.* Eames & Bellows.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported substantially the following facts:

That plaintiff presented the following account:

"1851 & 1852.   To drawing out and chopping 70 cords
Dec. & Jany.        of wood at $1,25,                    $87,50
                    " two days work making road,           3,00
                    " two bags at 28 cts.,                    56
                    " three bushels meal at 50 cts.,        1,50
                                                        ————————
                                                         $92,56 "

That the defendants presented their account amounting to $2,93 concerning which there was no dispute.

The auditor disallowed the *second, third* and *fourth* items in the plaintiff's account; and in relation to the *first* item found, that at the time of the deal embraced in their respective accounts, the parties resided in the state of New Hampshire, that defendants still reside there, but that the plaintiff moved in April, 1852, to Bradford, in this state, where he since and now resides.

That some time previous to January 1852, the defendants entered into a contract with the Atlantic and St. Lawrence Railroad Co., to furnish them a quantity of four foot wood, to be delivered at a certain point on said road, on or before April 1, 1852.

That in December, 1851, or January, 1852, the defendants owned a yoke of oxen, which the plaintiff wanted to purchase, and that it was then agreed between the parties, that plaintiff should have the cattle, and should pay the defendants for them by cutting, drawing and cording up, at the place where defendants were to deliver said wood to said Railroad Co., seventy-five cords of wood, the said wood to be cut on the land of defendants, at a place named; that no time was expressly limited in which plaintiff was to deliver said wood, but was informed by the defendants of their contract with the said Railroad Co.; that the said cattle by the terms of their contract were to remain the property of the defendants, until paid for as before stated; and *that plaintiff* took possession of the said cattle immediately upon making said contract, and used them in drawing said wood in the winter of 1852, till into March, when he supposed he had drawn enough to fulfill his contract.

That the wood was surveyed by a person agreed upon, and

there proved to be but seventy cords; the plaintiff finished getting this wood between the 10th and 15th of April, 1852, but has never got out the other five cords.   That in the  latter part of March, 1852, the plaintiff let the  defendant, Bellows, have the said cattle to use for a time for their keeping; and that about a week before plaintiff finished getting said  seventy cords  of wood, he  went to Bellows, and told him he wanted the  cattle, that he  thought they were growing poor, and he was agoing to get one Johnson, to keep them ; that said Bellows refused to let  plaintiff have them, as he had heard and suspected that plaintiff was intending to sell them; but told plaintiff, he  might take them if he would  give security that he would finish the wood, according to agreement.   That plaintiff refused to do this, and insisted on  having the cattle  *then*, and said if  he did not have  them *then*, he should not take them *at all.*

That said  cattle remained in  defendant's possession until the 12th day  of April, 1852, when  they were attached on  a writ against the plaintiff, which suit is still pending, and that the sheriff sold said cattle under the laws of  New Hampshire.

The auditor found that the cattle were worth $65, at the time they went back into defendant's hands ; and that the chopping and drawing said  wood was worth  one  dollar per  cord, in the whole $70, and  also that said  seventy cords of wood  was sold  to said Railroad Co. by the defendants before  the commencement of this suit.

Upon these facts, if the plaintiff is  entitled to recover, the auditor found due him from  the defendants to balance book accounts the sum  of $71,97 ; but if the  court decide that plaintiff is not entitled to recover  then the auditor  found due to the  defendants from the plaintiff the sum of $2,93.

The County Court, January Term, 1854,—COLLAMER, J., presiding,—rendered judgment on the report for the  plaintiff to recover the sum found due by the auditor.

Exceptions by defendants.

*A. Underwood* for defendants.

It is manifest from the  finding of the  auditor, the  *cutting and drawing*, &c. of the  wood, was a  *condition precedent* to plaintiff's right *to  have the cattle.*   Plaintiff *wanted  to purchase.*   It was

*agreed* he should have them and pay by cutting, &c., and they were to remain defendants' *till* the *contract was fulfilled*.

From the finding of the auditor, plaintiff was clearly in the wrong. He had no right to demand the cattle not having performed the contract, by the *time stipulated*, and refusing to give other security, that it should be thereafter performed.

Had the defendant, given the plaintiff a bond for a deed of lands on *payment of the price*, by a time certain, as well might he *recover back the part of the consideration paid*, because defendants *refused* to *convey* before the whole consideration is paid.

A mortgagor may with equal propriety recover back what is paid on the mortgage debt, because the mortgagee refuses to release his mortgage before *all is paid*. *Sutton et al*. v. *Estate of Sutton*, 13 Vt. 71. *West* v. *Bolton*, 4 Vt. 558. *Bigelow* v. *Huntly*, 8 Vt. 154. *Batchelder* v. *Warren*, 19 Vt. 377. *Chandler* v. *Edwards*, 3 Vt. 161. *Fay* v. *Oliver*, 20 Vt. 118.

Again, should the court consider the *time*, for completing plaintiff's contract was not *limited* to April first, then it is insisted the contract was executory, and plaintiff's claim, if he had one, was for the recovery of *damages*, and could not be recovered on *book account*. *Smith* v. *Smith*, 14 Vt. 440. *Bayley* v. *Bayley*, 16 Vt. 656.

The contract could not be rescinded by the plaintiff alone, unless something was done by defendants tantamount to a *rescinding on their part*, which it is insisted was not done, the defendants all the while insisting plaintiff should perform, and standing ready to deliver the cattle when performed, or *before*, on receiving other security. *Allen* v. *Edgerton*, 3 Vt. 444. *Hammond* v. *Buckmaster*, 22 Vt. 375. Chitty on Cont. 573.

The parties could not by *rescinding*, be put in *statu quo*. The plaintiff had had the *use* of the cattle to *draw the wood*. Defendants were *owners* of the *wood*, and plaintiff had expended his *labor* upon it *only*.

The case of *Stone* v. *Pulsifer*, 16 Vt. is *different* from the present case. In that case, the defendant *reclaimed the oxen*, and appropriated them to *his own use*, by killing one, and selling the other. This was an act on the part of the defendant, which authorized plaintiff to treat the contract as rescinded. It was a rescinding on the part of defendant.

*R. McK. Ormsby* for plaintiff.

The contract in this case was not performed. The auditor reported facts, from which the fair inference is, that the defendants refused to deliver possession of the oxen to the plaintiff before the the failure of the plaintiff in respect to his part of the contract.

The plaintiff was by the bargain entitled to the possession of the oxen, until a failure on his part; and no time was expressly fixed or specified, and as, on refusing to re-deliver the oxen on request, the defendants set up other causes in excuse, and did not complain that plaintiff was in fault, as to the performance of his contract, the county court rightfully considered that the demand of security by the defendants under the circumstances was unauthorized.

If by the wrongful act of defendants, plaintiff was at liberty to put the contract to an end, he can recover for what he did. *Tyson* v. *Doe,* 15 Vt. 571. *Gilman* v. *Hall,* 11 Vt. 510.

To authorize a recovery on book account, the case of *Stone* v. *Pulsifer,* 16 Vt. 428, is directly in point, running with this *quatuor pedibus. Stearns* v. *Havens et al.,* 16 Vt. 87. *Austin* v. *Wheeler,* 16 Vt. 95.

The opinion of the court was delivered by

ISHAM, J. The case of *Stone* v. *Pulsifer et al.,* 16 Vt. 428, seems quite decisive of the questions which have been raised in this case. It was there held, that when property was sold conditionally, and payments had been made for it by way of services, the services might be charged on book, to await their subsequent application; and if the property sold has been received back by the vendor, the vendee, may recover for his services, in an action on book, before any application has been made.

The sale of the oxen to the plaintiff in this case was conditional; they were to remain the property of the defendants until paid for. The payment of the whole sum was a condition to be fully performed, before the vendee had any title or attachable interest in the property. *Smith* v. *Foster,* 18 Vt. 182. The plaintiff took, and under the contract of sale, was to have the immediate possession and use of the oxen, to enable him to deliver the wood which he was to procure in payment for them. The wood for the oxen was to be cut, corded, and delivered, by the time and in a manner

that would enable the defendants to use it in fulfilling, and to that extent, performing their contract which they had made with the Railroad Company. As the plaintiff's contract was not performed, either as to time or quantity, by the 1st of April, 1852, the defendants were not bound to receive the wood; yet his default in this matter might be waived by the defendants, and was so, by receiving the 70 cords of wood which were surveyed about the 15th of April, 1852, and by their disposing of the same under their contract with the Railroad Company. For that wood, the defendants are accountable to the plaintiff, either by receiving it in payment towards the oxen, or by paying him its value. If the defendants have done no act disaffirming the plaintiff's right to the cattle, the plaintiff cannot recover in this action. But if they have in any way disaffirmed the contract, or refused to fulfill on their part, by re-taking the possession of the oxen, they must then account in this action, for the wood they have received.

We learn from the case, that in the latter part of March, 1852, the plaintiff permitted the defendants to take the cattle to do some work for their keeping, and while the cattle were in their possession for that purpose, and about a week before the wood was cut and corded, the plaintiff requested of the defendant, Bellows, a return of the cattle to him, which he refused, unless the plaintiff procured other security for the debt, as he had heard the plaintiff was intending to sell them. The defendants were not justified in withholding the cattle from the plaintiff from any apprehension they may have had that the plaintiff had any such object, as no such sale could be made by him, so as to defeat their title to the cattle; neither could they retain them for further security; for that would be imposing new terms and conditions to the contract of sale. The defendants' refusal to re-deliver the cattle to the plaintiff was, therefore, a denial of the plaintiff's right to them. It was a disaffirmance of the contract of sale, and of the loan under which the cattle came into their hands, and was an assertion of their right to the custody and control of them. In refusing to let the plaintiff have the cattle under those circumstances, the defendants subjected themselves to pay for the wood they had received of the plaintiff, deducting therefrom a reasonable compensation for the use of the cattle. This was the decision of the county court, and we perceive no error in it.

The subsequent attachment and sale of the cattle by Charles Bellows, as the property of the plaintiff, can have no effect in the case. The attachment was made April 12, 1852, after a demand for the cattle had been made, and after the plaintiff's right to charge for the wood was fixed; the plaintiff, therefore, had no interest or property in the cattle that could be attached. The attachment was a violation of the right of the defendants for which they have their remedy. In such an action it has been held, that the defendants can recover the value of the property at the time of the attachment, and that the attaching creditor cannot hold the property even by tendering the amount which the vendee agreed to pay for the property. *Buckmaster* v. *Smith*, 22 Vt. 203. Under the decisions in this state, to which we have referred, the defendants are accountable to the plaintiff in this action for the wood which they have received, and the plaintiff is responsible for the use of the cattle in the sums as they have been respectively found by the auditor in each case; and the defendants must look to the persons who took the cattle from them, for their value.

The judgment of the County Court is affirmed.