## ALBERT W. HUGHES vs. JOHN KELLY.

By a written contract *H* agreed to let and *S* to hire a carriage and horses belonging to *H* for eight months, at a rent of $12 per week payable weekly; the property to be owned by *S* at the end of the term if the rent should be paid according to the contract; and on default of any payment *H* to have the right to take immediate possession and to retain the payments already made. After *S* had made several payments and a final default of payment, the property was attached by one of his creditors. In replevin brought by *H*, in which it was found that it was in fact intended by the parties to the contract that the title should not pass to *S* until full payment, it was held—1. That the contract did not constitute a sale, but was an executory agreement for a future sale upon the performance of the conditions stated in it. 2 That *H* had a right to the possession of the property upon default made by *S*, without previous demand upon him.

It seems that, while it is the established policy of our laws that a man's property should be subject to the payment of his debts, there is no mode by which an interest, like that of *S* in the property in question, can be reached by his creditors. The evil can be remedied only by legislation.

REPLEVIN, for a carriage, two horses and two harnesses; brought to the Court of Common Pleas of New Haven County, and tried on the general issue, with notice, closed to the court, before *Pardee, J.* The court found the following facts:—

On the 29th of April, 1872, the plaintiff and one Conrad Spreyer made the following contract, upon the execution of which the property described in it, and which belonged to the plaintiff, was delivered to Spreyer.

"Agreement between Conrad Spreyer, of New Haven, and Albert W. Hughes, of New Haven. Said Hughes agrees to rent and said Spreyer agrees to hire one hack called a close coach, two horses, two harnesses, two blankets, and one robe, for the term of eight months, from the 29th day of April, 1872, at the rent of $12 per week, payable on the first Monday of each week in advance. And it is agreed that if said rent shall be paid promptly according to agreement, said carriage, horses, harnesses, &c., shall be the property of said Spreyer at the end of said term; and further, if said Spreyer shall neglect to pay the rent falling due at

any time, said Hughes shall be at liberty to enter the building or premises where said carriage, horses, harnesses, &c., may be, and take them into his possession wherever found, and the money already paid shall belong to Hughes. And said Spreyer is to be responsible for all damages except the usual wear and tear, and to pay all taxes and insurance.

A. W. HUGHES,

CONRAD SPREYER."

Sundry payments were made by Spreyer between the date of the contract and the 16th of September, 1872, on which day the last payment was made. These payments were $12 per week for each week, except the week commencing June 10th, when only $9 was paid, that commencing September 2d, when only $10 was paid, and the weeks commencing July 8th, 15th, 22d, and 29th, and that commencing September 9th, for which weeks nothing was paid. It was found however that the plaintiff waived the default made on these days.

On the 25th day of May, 1872, Spreyer preferring an open carriage belonging to the plaintiff, they effected an exchange, and the plaintiff gave Spreyer credit by an endorsement on the contract for $150, the difference in the value of the two carriages, and the open carriage was included in the attachment hereinafter stated. Soon after one of the horses becoming lame, the plaintiff took it back and gave Spreyer another in place of it, there being no charge or credit for any difference in their value, which last horse was also attached.

The property from the 29th of April, 1872, changed as above stated by the substitution of a different carriage and a different horse, remained in the possession of Spreyer until attached, and was used by him in his business of hackman, without accounting to the plaintiff, and without the exercise of any authority by the plaintiff over the same, except occasionally visiting the barn where it was kept, to see that it was in good condition, and occasionally making suggestions to Spreyer as to the mode of caring for the horses, and always in his conversation claiming the property as his own.

It was the intention of the plaintiff and Spreyer that the title of the property should not pass until the payments specified in the writing were all made, but that, when the full amount should be received by Hughes, the title should pass without further payment.

On the 30th day of September, 1872, and before the payments had all been made, the defendant attached the open carriage and horse last received as above stated, and all the other property described in the contract, except the close carriage and horse that were taken back, in a suit against Spreyer.

Before bringing the present suit the plaintiff, with Spreyer, called on the defendant, and informed him that the property belonged to the plaintiff, and demanded a surrender of the same, which was refused.

Upon these facts the defendant claimed that, at the date of his attachment, the plaintiff had no such property in, or possession of, the articles attached as would enable him to maintain this action of replevin, and that the defendant had a right to attach and hold them as a creditor of Spreyer. But the court held otherwise, and upon the facts found the issue for the plaintiff, and rendered judgment for him to recover the property, with nominal damages and costs.

The defendant filed a motion in error and brought the record before this court.

*W. C. Robinson*, for the plaintiff in error.

1. The entire property in these goods passed to Spreyer, on the 29th of April, 1872. *First.* The agreement of that date was a sale and not a lease. A sale is the transfer of the absolute property in goods, forever. 2 Black. Com., 446. A lease is the transfer of the possession thereof for a specified time. 2 Black. Com., 453. The object of this agreement was to transfer the property to Spreyer. Such is its apparent effect. As such the parties dealt under it. Particular words of leasing will not control this evident object. *Lines* v. *Flagg*, 4 Conn., 590; *Bulkley* v. *Chapman*, 9 id., 8; *First Society of Waterbury* v. *Platt*, 12 id., 188; *Sands* v.

*Lyon*, 18 id., 27. *Second.* That sale vested the property immediately in Spreyer. A sale is either absolute or upon condition. A sale upon condition is either upon condition precedent or upon condition subsequent. A sale upon condition precedent is an agreement, by the vendor, to sell to the vendee upon performance of the condition, and requires a future act of the grantor. *Forbes* v. *Marsh*, 15 Conn., 396; *Hart* v. *Carpenter*, 24 id., 427; *Cragin* v. *Coe*, 29 id., 53. A sale upon condition subsequent vests the property conditionally in the vendee, to be defeated on his failure to perform the condition. *Smith* v. *Prince*, 14 Conn., 477; *Murch* v. *Wright*, 46 Ill., 487; *Haak* v. *Linderman*, 64 Penn. S. R., 499; *Esty* v. *Graham*, 46 N. Hamp., 169. This sale was upon condition subsequent and vested the property in Spreyer. Such is the necessary construction of the agreement. The intention of the parties is matter of law for the court, not a fact to appear on the record. *School District* v. *Lynch*, 33 Conn., 333. *Third.* At the date of attachment the condition had not been broken and the property remained in Spreyer.

2. At the date of attachment the plaintiff had neither the possession nor the right to the possession of these goods. The agreement and delivery vested the right to possession in Spreyer. This right remained in him until forfeiture and demand of return. If there was any forfeiture it had been waived, and there was no demand of return before the attachment. At the date of the attachment the right of possession was therefore still in Spreyer.

3. The plaintiff, not having both property and the right of possession at the date of the attachment, cannot maintain this suit. This action lies only where the attachment itself is unlawful. Gen. Statutes, p. 77, sec. 337; *Prentice* v. *Ladd*, 12 Conn., 334. The subsequent custody is required by law, and is therefore lawful. Whether an attachment is lawful or not depends upon the rights of property and possession at the moment of attaching. *Tomlinson* v. *Collins*, 20 Conn., 364; *Jackson* v. *Hubbard*, 36 id., 13. Where the defendant in the attachment suit has the right of possession

at the time of the attachment, this form of replevin will not lie. Such an attachment is not a conversion. *Forbes* v. *Marsh*, 15 Conn., 399; *Brown* v. *Chicopee Falls Co.*, 16 id., 87; *Thompson* v. *Button*, 14 Johns., 84; *Judd* v. *Fox*, 9 Cowen, 259; *Pain* v. *Whittaker*, Ry. & Mood., 99. Such an attaching creditor stands as a *bonâ fide* purchaser from his debtor, and such a purchase is not wrongful. *Parker* v. *Middlebrook*, 24 Conn., 210; *Lynch* v. *Beecher*, 38 id., 493. The subsequent demand cannot aid this action, since the injury was complete before such demand was made, however it might serve as the ground of an action for goods unlawfully detained. *Jackson* v. *Hubbard*, 36 Conn., 14; *Stapleford* v. *White*, 1 Houston, 238.

4. Whatever rights the plaintiff may have had in these chattels, he cannot maintain this action against the present defendant. At the date of the attachment Spreyer had a valuable interest in the property. This interest was assets and liable to attachment and execution. It could only be attached by attaching the goods. By the attachment the attaching creditor became the holder of Spreyer's interest and subject to its obligations. Such an attachment works no wrong to the plaintiff, while it preserves the rights of creditors, and subjects valuable property to the payment of debts.

*Spier*, for the defendant in error, contended that the contract was not a contract of sale, passing the title or any attachable interest to Spreyer, but was in its terms and in its nature a lease, in connection with an executory agreement for a future sale after the expiration of eight months and upon the full performance of the agreement of Spreyer as to the payments; citing *Middletown Savings Bank* v. *Bates*, 11 Conn., 523; *Forbes* v. *Marsh*, 15 id., 399; *Hart* v. *Carpenter*, 24 id., 430; *Tomlinson* v. *Roberts*, 25 id., 484; *Marston* v. *Baldwin*, 17 Mass., 606, 612; *Barrett* v. *Pritchard*, 2 Pick., 512; *Whitwell* v. *Vincent*, 4 id., 449; *Reed* v. *Upton*, 10 id., 522; *Fairbank* v. *Phelps*, 22 id., 535; *Hill* v. *Freeman*, 3 Cush., 257; *Tyler* v. *Freeman*, id., 261; *Pettis* v. *Kellogg*, 7 id., 456; *Sargent* v. *Metcalf*, 5 Gray, 306; *Blanch-*

*ard* v. *Child*, 7 id., 155 ; *Burbank* v. *Crooker*, id., 158 ; *Porter* v. *Foster*, 20 Maine, 391 ; *Leighton* v. *Stevens*, 22 id., 252 ; *George* v. *Stubbs*, 26 id., 243.

FOSTER, J. The written agreement between Hughes and Spreyer, which appears on the record, does not constitute a sale of the property mentioned in it, concerning which this controversy has arisen. It is an executory agreement for the sale of that property at a future day, upon the performance of certain stipulations fully set forth in the instrument. By this contract the title of Hughes to the property was not divested ; he still continued to be the owner ; and by the finding, it was the intention of the parties that the title to the property should not pass, until all the payments specified in the contract should have been made.

The questions involved in this case we must consider settled by repeated decisions in our own state and in other states. The cases of *Forbes* v. *Marsh*, 15 Conn., 384, *Hart* v. *Carpenter*, 24 Conn., 427, and *Tomlinson* v. *Roberts*, 25 Conn., 477, we regard as quite decisive.

The claim of the plaintiff in error, that at the time of the attachment the right of possession was still in Spreyer, and therefore that this action of replevin cannot be maintained, we regard as untenable. The finding indeed shows that the plaintiff in that action waived his right that the payments due on the 8th, 15th, 22d and 29th of July, and the 9th of September, should be made on those days respectively. But neither the payment due on the 23d of September, nor that due on the 30th, was made ; and by the terms of the contract Hughes was at liberty, on the neglect of Spreyer to pay, to take the property into his possession wherever found. As the contract says nothing of any demand to be made previous to taking possession in default of payment, we find no warrant for interpolating such a provision into the contract. The property was attached by the plaintiff in error on the 30th of September ; and though no demand was made of Spreyer prior to bringing the action of replevin, the plaintiff in that suit called on the plaintiff in error after the attachment, and

informed him that the property belonged to him, the defendant in error, and demanded that it should be surrendered. The plaintiff in error refused to surrender it. The title to the property and the right to the immediate possession being in Hughes, there is no difficulty in his maintaining the action of replevin.

It is the established policy of our law to hold a man's property subject to the payment of his debts. Yet it is quite apparent that in this case, and in others of like character, a man may appear to have, and in fact actually have, a valuable interest in property, which is beyond the reach of legal process. We cannot hold the property in question liable to attachment by the creditors of Spreyer unless he was the owner. He was not the owner. Hughes had not sold it; and in the language of Chief Justice Holt in *Thorpe* v. *Thorpe*, 1 Salk., 171, " every man's bargain ought to be performed as he intended it; * * * there is no reason why a man should be forced to trust where he never meant it."

Should evils spring up under the law as it now is, the legislature, it is to be presumed, will in due time provide the proper remedy.

There is no error in the judgment of the court below.

In this opinion the other judges concurred.