## ISAAC OWENS v. HASTINGS & SAXTON.

CONDITIONAL SALE; *No Title Passes, Until Performance.* H. & S., owning ties along the line of road of the St. Jos. & Denver City Railroad Company, made a contract with said company by which the latter were authorized to take as many of said ties as it needed for the repair of its track, in which contract it was stipulated that the ties were to be counted and accounted for after they were placed under the track, and that the title should not pass to the company until after they were under the rail. *Held,* That such stipulation, as to the time of passing the title, was valid, and that no creditor of the company, having notice of such contract, could, prior to such time, acquire any title to such ties as against H. & S. by a levy and sale on an execution against such company, although the employés of the company had taken possession of the ties and moved them to different places along the line of the road.

### Error from Doniphan District Court.

REPLEVIN for 428 railroad ties, brought by *H. D. Hastings* and *Alba M. Saxton*, as partners, against *Isaac Owens*. Trial at September Term 1875 of the district court, and judgment in favor of plaintiffs. *Owens* brings the case here. The facts are stated in the opinion.

*Albert Perry*, for plaintiff in error, contended that, when the railroad company, by its agents, took possession of the ties, (under the contract set out in the opinion,) the title passed to said company, and the ties could be taken on

execution  by its  creditors, as  at such  time there was a com-
plete delivery and separation from  the ties of Hastings &
Saxton.  The sale was not conditional.  No. provision was
made in the contract that Hastings & Saxton might reclaim
the ties if not paid for.  This case is to be distinguished
from the rule laid down in *Sumner v. McFarlan*, 15 Kas.
600, and *Hallowell v. Milne*, 16 Kas. 65.  Moreover, H. & S.
provided in their contract that the ties, *as a chattel*, should
be (in the hands of the railroad company) utterly destroyed —
that they should be put under the track — attached to the
realty.

*Doniphan & Reed*, and *W. W. Guthrie*, for defendants in
error, contended that it was competent for the parties to make
a contract for the conditional sale of the ties, and that a con-
ditional vendor can reclaim his property even in the hands
of innocent purchasers at execution sales, or innocent pur-
chasers for value.  36 Mo. 479; 44 Mo. 326, 412; 19 Me.
154; 3 Cush. 257; 4 Cush. 195; 1 Pars. Contr. 537; Story
on Sales, § 313.

The opinion of the court was delivered by

BREWER, J.: This was an action of replevin brought by
Hastings & Saxton against Owens, for a lot of railroad ties.
Owens had theretofore recovered judgment in a justice's court
against the St. Joseph & Denver City Railroad Company, and
on the supposition that these ties were the property of said
railroad company he had caused them to be levied upon and
sold to satisfy his judgment, and Owens at such sale became
the purchaser.  Hastings & Saxton were in fact the owners
of these ties, having purchased them, together with a large
number of others, in 1872, when as contractors of said rail-
road company they had undertaken to build the said road
from Marysville, Kansas, to Kearney Junction, in Nebraska;
and the ties in dispute were among a large lot that were on
hand when the said road failed in 1872, and Hastings &
Saxton discontinued their work under said contract.  The

plaintiffs below had left these ties, as well as all on hand at that time, scattered along the line of said railroad where they had been delivered for use in the construction of said road, and they had thus remained until said railroad company were allowed to take them under the following circumstances.: In May 1875, the said railroad, needing ties to replace decayed ones, entered into an agreement, *in writing*, with Hastings & Saxton, of which the following is a copy:

"Agreement between the St. Joseph & Denver City Railroad Co. and Hastings & Saxton. The following agreement made this second day of May 1875, by and between the St. Joseph & Denver City Railroad Co. of the first part, and Hastings & Saxton of the second part, witnesseth: That the party of the second part agrees that the party of the first part may select as many ties on the line of the St. J. & D. C. railroad as they may need, and after they (the ties) are placed under the track of said road they shall be counted, and accounted for to the parties of the second part at the price of thirty cents per tie; and the party of the first part agrees to pay for the same in monthly payments of one thousand dollars per month, and any fractional payment in proportion. And whereas, the party of the first part have used, previous to this time, bridge timber agreed on at four hundred dollars, they bind themselves to pay in like manner for any timber that the party of the first part may need. They shall have the right to use (at 18 per $M$,) as long as the timber remains in Elwood not otherwise disposed. The said ties shall not be considered the property of the St. Joseph & D. C. Railroad Co. until placed under the rail.     L. D. TUTHILL,

*General Manager for St. Jos. & D. C. R. R.*

HASTINGS & SAXTON."

No question of estoppel can arise in this case, because Owens had ample notice of Hastings & Saxton's claim, and as he himself testified, Saxton offered to show him the contract if he would come to their office. So that the only question is, whether this contract is valid, so far as it attempts to fix the time at which title to the ties should pass. And we fail to see any sufficient reason against its validity. Prior to the contract, the ties were the unquestioned property of Hastings & Saxton. No creditor of the railroad company had or

could acquire any interest in them. How then could he in any way be wronged by any disposition which Hastings & Saxton made of them? Why could not the latter fix the time at which their title should pass, and fix it too in such a manner, and with the purpose of cutting off any opportunity for just such levies as this? They knew that the railroad company was embarrassed; that a mortgage foreclosure was pending; and they had a right to make any stipulation like the one before us, for the purpose of protecting their own interests, and securing payment for their property. They might have been willing to trust to the mortgage creditors to pay for these ties, and not to the general creditors. Perhaps they held the mortgage bonds themselves. At any rate, they fixed the time at which they were willing to part with the title; and until that time arrived, no creditor of the railroad company could question their title, or acquire any interest in the property. It was a conditional sale, with condition not performed, and therefore no title passed. We see no reason to doubt their title, and therefore the judgment must be affirmed.

All the Justices concurring.