# NEVADA MOTOR CO. *v.* BREAM (NEVADA FINANCE CORPORATION, Intervener)

No. 2790

August 6, 1928. 269 P. 602.

(COLEMAN, J., dissenting.)

*Sardis Summerfield*, for Appellant:

*Thatcher & Woodburn* and *John Donovan*, for Respondents:

## OPINION

By the Court, SANDERS, C. J.:

On the 15th day of December, 1926, the Nevada Finance Corporation and one J. H. Bream entered into a conditional contract of sale whereby Bream agreed to

purchase from the corporation and the corporation agreed to sell, transfer and deliver to Bream, upon the terms and conditions specified in the contract, a certain Willys-Knight automobile for the sum of $1,537, payable as follows: $1,050 in cash, upon the signing of the contract, the receipt of which was acknowledged, and $82 on the 15th day of January, 1927, and $81 on the 15th day of each succeeding month until the entire balance of $487 should be paid, with interest at twelve per cent per annum after date of maturity. The contract, among other things, provided that if default were made in the payments, the seller could without process of law retake possession of the automobile and sell it, and credit the buyer with any excess of the amount due on the purchase price, or that the seller might elect to declare the contract forfeited and at an end, and in that event take possession of the automobile wherever found, and treat all payments previously made as compensation for depreciation, damage and use of the automobile. Another of the provisions of the contract was that:

"The title to the said property shall remain in the first party or its assigns until all of the said payments are made and all of the conditions herein contained fully complied with."

On the execution of the contract the automobile was transferred and delivered to Bream, who retained possession and control thereof as owner until the 13th day of January, 1927, on which date the Nevada Motor Company began an action against him, the buyer, in the court below to recover a money judgment for the sum of $541.71, and caused said automobile to be attached and taken into possession by the sheriff of Washoe County to satisfy any judgment that might be rendered against the defendant Bream in the action. On the 13th of January, 1927, the Nevada Finance Corporation notified Bream orally to release the attachment or it would have to repossess the automobile under the contract, and notified him again to the same effect on the 16th of January, 1927. On the 13th and

14th of January, 1927, the Nevada Finance Corporation had, in writing, also demanded of the sheriff the possession of the automobile. The attachment was not released and the sheriff refused to deliver possession because of the indemnifying bond given to him by the plaintiff, Nevada Motor Company. On January 21, 1927, the Nevada Finance Corporation was permitted to intervene in the action, and it filed its amended complaint in intervention praying that it be adjudged and decreed that the Nevada Motor Company had no right, title or interest in the attached automobile; that the automobile was not subject to attachment in the action, and that the Finance Corporation be adjudged the owner thereof and entitled to its immediate possession, and that the sheriff be ordered to release said attachment and deliver the automobile to the plaintiff, Nevada Finance Corporation. J. H. Bream did not answer the complaint in intervention and his default for failure to answer was duly entered. The Nevada Motor Company answered, and the issues joined upon the complaint in intervention and answer thereto were tried to the court without a jury. A trial was first had upon the issues between the plaintiff and the defendant in which judgment was rendered for the plaintiff and against the defendant Bream. The issues between the Finance Corporation and the Motor Company respecting the attached automobile were tried, which resulted in a judgment in favor of the Motor Company and against the Finance Corporation. Thereupon the corporation moved for a new trial, which motion was denied. The corporation appeals from the judgment and from the order denying it a new trial.

The record discloses that both parties prepared proposed findings of fact and conclusions of law, but upon consideration thereof the trial court made and caused to be entered the following findings of fact and conclusions of law:

"I. That under date of December 15, 1926, the defendant, J. H. Bream, entered into a contract with the Nevada Finance Corporation for the purchase and sale

of a certain Willys-Knight coupe, 1926 model, serial No. 16242, the purchase price of which was the sum of $1,537, said Bream paying thereon $1,050, a true copy of said contract being attached to intervener's complaint, marked Exhibit A.

"II. That on the 13th day of January, 1927, and at all times thereafter the said automobile had a value of seven hundred ($700) dollars, or upwards, in excess of the claim of the Nevada Finance Corporation.

"III. That at all times on and after the 13th day of January, 1927, the plaintiff was ready and willing and able to pay the Nevada Finance Corporation the entire balance with interest due under the said contract, and the plaintiff on the 13th day of January, 1927, duly offered to pay the same to the Nevada Finance Corporation, which offer the Nevada Finance Corporation refused.

"IV. That at no time was the defendant, J. H. Bream's interest in default under his contract with the said intervener.

"V. That the said intervener, the Nevada Finance Corporation, did not at any time declare a forfeiture of the rights of the said J. H. Bream given him under said contract.

"VI. That on the 13th day of January, 1927, at the commencement of this action, plaintiff caused the sheriff of Washoe County, Nevada, to attach and seize said Willys-Knight automobile under a writ of attachment which plaintiff caused to be issued and delivered to said sheriff, and that said writ of attachment was by this court dissolved on January 18, 1927, and that upon said last-named day plaintiff again caused the said sheriff to seize, attach, and hold possession of said Willys-Knight automobile.

"VII. That the plaintiff, Nevada Motor Company, on the 15th day of June, 1927, deposited in open court the sum of $520 in gold coin of the United States of America, to cover the difference between the amount that the said defendant, J. H. Bream, had paid to the Nevada Finance Corporation, under the terms of the said

contract, and the amount due thereunder, together with interest thereon; that there is due and owing to the Nevada Finance Corporation the sum of $516.22, which includes the balance due it, with interest.

"VIII. That on the 14th day of January, 1927, and again on the 26th day of January, 1927, intervener, Nevada Finance Company, demanded repossession of said automobile from the sheriff of Washoe County, Nevada, who declined to comply with intervener's demands, giving as a reason for such declinations that he had been indemnified by plaintiff herein.

"CONCLUSIONS OF LAW

"I. That the interest of the said defendant, J. H. Bream, in said automobile, was and is an attachable interest.

"II. That the attachment of the plaintiff, Nevada Motor Company, lies against the property heretofore attached, namely, one Willys-Knight coupe, 1926 model, serial No. 16242, and that said automobile by virtue thereof is subject to attachment.

"III. That the clerk of the court be and he hereby is directed to pay to the intervener, Nevada Finance Corporation, upon its demand, the sum of $516.22, out of the sum deposited by the plaintiff in court, and to pay the remainder of said fund to the plaintiff.

"IV. That the intervener, Nevada Finance Corporation, has no further right, title, or interest in and to said automobile.

"V. That plaintiff have judgment for its costs herein."

In accordance with these findings and conclusions judgment was entered.

 Counsel for the intervener and appellant insists that the court erred in its conclusion of law No. I, and in rejecting intervener and appellant's proposed counter conclusion. The conclusion of law No. I reads:

"That the interest of the said defendant, J. H. Bream, in said automobile, was and is an attachable interest."

This is the question of law presented for our determination. All property not exempt from execution may be

attached. Section 5151, Rev. Laws. All property, real and personal, of the judgment debtor, not exempt by law, and all property and rights of property seized and held under attachment in the action, shall be liable to execution. Section 5287, Rev. Laws.

The vendee, under a contract of conditional sale, is the equitable owner of the article specified in the contract. The person in possession of an automobile under a contract of conditional sale is for all practical purposes the owner thereof. Welch v. Harnett, 127 Misc. Rep. 221, 215 N. Y. S. 540. At common law a conditional vendee acquired no title until the condition was performed, and his attaching or execution creditors stood no higher. See Harkness v. Russell, 118 U. S. 663, 7 S. Ct. 51, 30 L. Ed. 285; Williston on Sales (2d ed.), sec. 326. This rule is subject to modification and an attaching creditor may be placed in the shoes of the vendee upon tendering performance of all obligations existing against the vendee. King v. Cline, 49 Cal. App. 699, 194 P. 290.

"As the buyer's right is in its nature analagous to that of a mortgagor, the rights of his creditors should be defined in the same way as the rights of a mortgagor's creditors; that is, the creditors should be given the right to discharge the mortgage; namely, pay the portion of the price remaining due upon the conditional sale and by so doing acquire the right to treat the full ownership as belonging to the mortgagor or buyer." Williston on Sales, sec. 326.

This is the method allowed by the trial court in this case.

In Coffin v. Northwestern Mutual Fire Ass'n. 249 P. (Ida.) 89, 48 A. L. R. 1225, it was held that:

"The buyer acquires more than a contract right, namely, a property right. A creditor of the conditional vendee may attach the interest of the buyer, pay the portion of the price remaining due, and by doing so acquire the right to treat the full ownership as belonging to the buyer. Of course, the buyer must not be in default. The creditor succeeds only to the buyer's rights."

We recapitulate the authorities cited in support of the foregoing statements:

1 Williston on Sales (2d ed.), p. 754, sec. 326; Leaf v. Reynolds, 34 Idaho, 643, 203 P. 458; Pease v. Teller Corporation, Limited, 22 Idaho, 807, 128 P. 981; Jones on Chattel Mortgages, sec. 11, et seq.; Dame v. C. H. Hanson & Co., 212 Mass. 124, 98 N. E. 589, 40 L. R. A. (N. S.) 873, Ann Cas. 1913c, 329; Hollenberg Music Co. v. Barron, 100 Ark. 403, 140 S. W. 582, 36 L. R. A. (N. S.) 594, Ann. Cas. 1913c, 659; Chicago Equipment Co. v. Merchants' Bank, 136 U. S. 268, 283, 10 S. Ct. 999, 34 L. Ed. 349; Harley & Willis v. Stanley, 25 Okl. 89, 105 P. 188, 138 Am. St. Rep. 900; Hervey v. Dimond, 67 N. H. 342, 39 A. 331, 68 Am. St. Rep. 673; Arthur McArthur Co. v. Beals, 243 Mass. 449, 137 N. E. 697.

In Chicago Railway Equipment Co. v. Merchants' National Bank, supra, the court said:

"But as pointed out in Arkansas Valley L. & C. Co. v. Mann, 130 U. S. 69 (32 L. Ed. 854, 857, 858), the agreement in Harkness v. Russell was upon the express condition that neither the title, ownership nor possession of the engine and sawmill which was the subject of the transaction should pass from the vendor until the note given by the vendee for the stipulated price was paid. Turning to the notes here in suit, we find every element of a sale and transmission of ownership, despite the provision that the title to the cars should remain in the payee, until all the notes of the series were fully paid. * * * The agreement that the title should remain in the payee until the notes were paid—it being expressly stated that they were given for the price of the cars sold by the payee to the maker, and were secured equally and ratably on the property—is a short form of chattel mortgage."

This case is followed in a number of cases. In Atkinson v. Japink, 186 Mich. 338, 152 N. W. 1080, it is held that, where an automobile is sold for cash and two notes, reserving title to car until notes were paid, title is retained as security only.

In Williston on Sales, section 330, it is said:

"As the purpose of the seller's right, whether a legal title or whether a right to resume the title on breach of condition, is merely to give him security for payment of the price, the transaction is in its essence a mortgage, though futile distinctions are often made."

That this is true has been frequently recognized. See note 80, Williston on Sales, section 330.

We find no error in the action of the trial court in permitting the Nevada Motor Company to pay the portion of the price remaining due upon the conditional sale of the automobile and in ordering it sold to satisfy the judgment of the company, the creditor of the buyer.

■ It is contended that the evidence does not support the finding of the trial court that at no time was the defendant Bream's interest in the automobile in default under the contract of sale. We find no error in this finding. The Motor Company began its action against Bream two days before the date upon which the first deferred payment specified in the contract became due, and the Nevada Finance Corporation had no right of possession of the automobile as against the sheriff of Washoe County. Newhall v. Kingsbury, 131 Mass. 445.

The judgment is affirmed.

DUCKER, J.: I concur.

COLEMAN, J., dissenting:

In England, and in every state in the United States except Pennsylvania, where the point has been decided, it has been consistently held that a vendee under a conditional sale contract has no interest in the property sold that could be levied upon under execution or attachment. Some of the authorities so holding are: Barrett v. Pritchard, 2 Pick. (Mass.) 512, 13 Am. Dec. 449; Strong v. Taylor, 2 Hill (N. Y.), 326; Keck et al. v. Natl. Cash Register Co., 12 Ind. App. 119, 39 N. E. 899; Sanders v. Wilson, 8 Mackey (19 D. C.), 555; Owen v. Hastings, 18 Kans. 446; Cole v. Berry, 42 N. J. L. 308, 36 Am. Rep. 511; Herring v. Hoppock, 15 N. Y. 409; Hasbrouck v. Lannsbary, 26 N. Y. 598; Hanway v. Wallace, 18 Ind. 377; Woodruff v. McDonald Fur. Co., 96 Ga. 86, 23 S. E.

195; Bradshaw v. Thomas, 7 Yerg. (Tenn.) 497; Smith v. Foster, 18 Vt. 182; Natl. Cash Register Co. v. Coleman, 85 Hun. 125, 32 N. Y. S. 593; Morris v. Allen, 17 Cal. App. 684, 121 Pac. 690; Drake on Attachment, sec. 246; McIver v. Williamson etc. Co., 19 Okl. 454, 92 P. 170, 13 L. R. A. (N. S.) 696; Marston v. Baldwin, 17 Mass. 606; Blanchard v. Child, 7 Gray (Mass.), 155; Porter v. Pettengill, 12 N. H. 299; Marquette Mfg. Co. v. Jeffrey, 49 Mich. 283, 13 N. W. 592; Hughes v. Kelly, 40 Conn. 148; 35 Cyc. 678, note 98; Installment Sales (Estrich), sec. 480.

Nor am I in accord with the view that the conditional sale contract was in effect a chattel mortgage. Johnson v. Kaeser et al., 196 Cal. 686, 239 P. 324; Fed. Com. Bank v. Int. Clay M. Co. 230 Mich. 33, 203 N. W. 166, 43 A. L. R. 1245, and notes.

Chief Justice Holt in Thorpe v. Thorpe, 1 Salk, 171, laid down a very wholesome rule when he said "every man's bargain ought to be performed as he intended it," which, so far as I am advised, has always been the principle which has been followed by this court.

ON PETITION FOR REHEARING

October 1, 1928.

Rehearing denied.

COLEMAN, J.: I dissent.