CONSOLIDATED GOLDACRES COMPANY, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9248.   Promulgated January 21, 1947.

*Frazer Arnold, Esq.*, for the petitioner.
*Felix Atwood, Esq.*, for the respondent.

OPINION.

Disney, *Judge*: Under the facts above set forth, is the petitioner entitled to include $221,476.59 as borrowed invested capital, in computing excess profits, within the intendment of section 719 (a) (1) of the Internal Revenue Code?[2] That section, in short, provides for such inclusion if the amount is (1) indebtedness and (2) if it is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust. Both elements must appear, that is, indebtedness, and the requisite form therof. If either is lacking, obviously the amount is not borrowed capital, within the purview of the statute. We first consider whether the alleged indebtedness was evidenced as by statute required.

The petitioner relies only upon the amount being evidenced by note, or, in substance, a mortgage, and does not contend that there was a bond, bill of exchange, debenture, certificate of indebtedness, or deed of trust. We agree that no claim could be well based that such forms were used, and proceed to consider the contentions as to note and mortgage.

First, as to note: Extended discussion is not necessary to state our view that a note is not shown. Recognizing fully that no particular form of note is required, nevertheless, we consider that we are presented here with no form of note, in any ordinary and accepted sense. The instruments here involved and relied on are not notes, but bilateral contracts; not a unilateral promise to pay, for a previous consideration recognized, but executory contracts carrying obligations on both parties. The petitioner cites and relies on *Aetna Oil Co.* v. *Glenn*, 53 Fed. Supp. 961, but that case not only involved a clear, absolute promise to pay $120,000, subject to no contractual obligation on the part of the payee, but in the opinion the court expressly, and in our view soundly, points out the essential nature of a note, as follows:

* * * It is also distinguished from the usual type of bilateral executory contract in that it is executory on one side only, with the entire consideration having been passed and executed by the party who is entitled to call for the performance. * * *

Such is not the nature of the "Contract of Conditional Sale," "Supple-

---

[2] SEC. 719. BORROWED INVESTED CAPITAL.

(a) Borrowed Capital.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *

mental Agreement on Conditional Sale," and "Memorandum" herein before us, for various and sundry mutual obligations of the parties are set forth therein and the consideration was performance by both. There was no "written promise to pay a certain sum of money at a future time unconditionally," within the definitions from Black's Law Dictionary and that of Bouvier, quoted by us on this point in *Journal Publishing Co.*, 3 T. C. 518 (523), in holding that the word "note" in the section here being construed was not satisfied by a bilateral contract. We conclude and hold that the amount here involved was not represented by a note, within the meaning of section 719 (a) (1).

Do the contracts compromise "in substance" a "mortgage," as petitioner contends, within the intendment of that section? The original and supplemental contracts are denominated "Contracts of Conditional Sale," and later "Memorandum" effects no modification in that regard. The terminology is, of course, not conclusive, but is to be given consideration with all other terms of the instruments. Petitioner recognzes that the form is not that of mortgage, the expression used by the statute, but contends that there was, in effect, a mortgage, retention of title being by way of security only. We said in *Journal Publishing Co.*, *supra*, that borrowed capital must be evidenced by the specific types of instruments set forth in section 719 (a) (1); and in *Economy Savings & Loan Co.*, 5 T. C. 543, that section 719 is to be given strict construction.

Though in some states there are decisions, in effect, erasing to some degree the distinction between conditional sales, or title retention contracts, and mortgages, the petitioner argues, and the respondent appears to agree, that the only state law here applicable is that of Nevada, the situs of the property involved and the state of petitioner's incorporation. Nothing of record indicates applicability of the law of any other state. The contracts here presented very carefully provided for retention of title by the seller until performance by the buyer, the petitioner. Section 6735, Nevada Compiled Laws 1929, provides: "A contract to sell or a sale may be absolute or conditional." And section 6752 provides:

PROPERTY IN SPECIFIC GOODS PASSES WHEN PARTIES SO INTEND. § 18. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

Reading the above provisions, it would appear that the statutes recognize that the parties could enter into conditional sales contracts and that they could provide in the contract when title to the property

should pass. This viewpoint was announced in *Studebaker Bros. Co.* v. *Witcher* (1921), 44 Nev. 442; 195 Pac. 334, where the court states, at page 338:

There seems to be little difficulty in determining from the terms of the contract that the parties intended it to operate as a conditional sales contract and *not by way of mortgage.* Its distinguishing feature in this respect is the retention of the title to the property in the seller until the full payment of the price is made by the buyer. This condition precedent to the transfer of title is contemplated by the Uniform Sales Act. Subdivision 1 of section 20 of this act reads:

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer." [Italics supplied.]

Petitioner contends that this case has been overruled by *Nevada Motor Co.* v. *Bream* (1928), 51 Nev. 89; 269 Pac. 602, and that the law in Nevada now recognizes that the transactions, usually called conditional sales contracts, are in their essence a mortgage.

We do not share this view. The *Nevada Motor Co.* case does hold that the vendee, under a conditional sales contract, has an equitable ownership of the article specified in the contract and that the creditor of the vendee may be placed in the "shoes" of the vendee upon tendering performance of all obligations existing against the vendee. This case appears to be decided on its particular facts and would have no bearing on a case where the facts were substantially different. The facts in the *Nevada Motor Co.* case were substantially as follows: Vendee had entered into a conditional sales contract and had not defaulted in any payments; the creditors of the vendee tendered the remaining payments plus interest to the vendor, thereby, at least in substance, making the conditional sales contract a completed contract. Under such circumstances it appears that it would have been inequitable for the court to have reached any other result, but we think the conclusion not helpful here.

As we view the problem, our main consideration is whether or not the courts of Nevada recognize a conditional sales contract as distinguished from a mortgage, and we consider the *Studebaker Bros. Co.* case as affirming such distinction, especially in view of the case of *Sellai* v. *Lemmon* (1944), 62 Nev. 330; 151 Pac. (2d) 95, which considers as valid a conditional sales contract, and says:

The conditions of the contract whereby plaintiff, on default of defendant repossessed the subject thereof, sold it at private sale and brought suit for the deficiency, were terms which could be validly imposed in the contract. They are not inconsistent with the retention of title in the seller, nor restricted by law,

nor are they contrary to public policy. Such terms have been recognized as valid in this and other jurisdictions. [Citing the *Studebaker Bros. Co.* case.]

The above language, in our view, recognizes conditional sales contracts as effective in Nevada. See also *Southern Pacific Co.* v. *Miller*, 154 Pac. 929.

*Studebaker Bros. Co.* v. *Witcher, supra,* is cited in the case of *In re Halferty,* 136 Fed. (2d) 640 (643), where the question was whether a contract was of conditional sale or of mortgage. The court, holding that it was not a mortgage, says:

In all jurisdictions, where litigated, such contracts as the one now in issue have been construed to be conditional sale contracts rather than mortgages, and effective to postpone the transfer of title, regardless of whether the action was based on the Uniform Sales Act, or the Uniform Conditional Sales Act, or both, or neither, or regardless of whether there were one or more valid conditions precedent. See *Faisst* v. *Waldo,* 57 Ark. 270, 21 S. W. 436; * * * [Citing many cases, including the *Studebaker* case, as above stated.]

Though in matters of equitable cognizance the right to redeem has been recognized in matters of conditional sale and retention of title, nevertheless the distinction between the "mortgage" required by section 719 (a) (1) and conditional sale is deeply grounded. *In re Lakes Laundry, Inc.,* 79 Fed. (2d) 326, involved section 77B of the Bankruptcy Act and a conditional sales contract under the Uniform Conditional Sales Act. The court held that property of one whose rights were only those of a conditional vendee was not covered by a reorganization petition, but was that of the conditional vendor until payment, and subject to repossession by the vendor; and that the vendor was not a mortgagee. The court said:

But, even though section 77B is a remedial statute to be construed liberally, we think Congress did not intend to ignore the distinction between property mortgaged by a debtor and property held by a debtor as conditional vendee. The distinction has been recognized in legislation from early times, and was a part of the common law. The fact that Congress expressly included the words "conditional sale agreement" in subdivision (o) (6) of section 75 of the act, 11 USCA § 203 (o) (6), and omitted any reference to conditional sales in subdivision (c) (10) of section 77B of the act, 11 USCA § 207 (c) (10), is significant and points to the conclusion that it meant in this instance to exclude property in the possession of the debtor whose rights therein were only those of a conditional vendee.

So here we think it is significant that Congress omitted any reference to "conditional sales contract" along with "mortgage" in section 719 (a) (1), and that we should not consider the conditional sales agreement here presented as within the ambit of that section. The petitioner seeks to demonstrate borrowed capital. We do not think that a mortgage "in effect" is shown in the instant case, within the intendment of the statute here to be construed. In truth, it shows the erection of a

plant by Western-Knapp Engineering Co., with title expressly and specifically retained by that company until it had received payment, in a certain manner, but in general according to the amount of ore or concentrates milled in the plant. Then, and only then, would a bill of sale be executed, under the agreement, and until that time the seller could select the managing operator of the plant, to be paid $500 per month by the petitioner. To us such an arrangement appears to come neither within the letter nor the spirit of the statute as to considering "borrowed capital" in the computation of excess profits tax. The contract was, in our view, under Nevada law and general principles, neither in form nor in substance, the mortgage required by section 719 (a) (1). In the light of such conclusion, it is needless to consider whether "indebtedness" was created by the contracts.

We hold that the Commissioner did not err in denying consideration of the amount involved as borrowed invested capital.

Reviewed by the Court.

*Decision will be entered for the respondent.*