——OF THE——

## STATE OF ARKANSAS

——AT THE——

### NOVEMBER TERM, 1885.

CONTINUED FROM VOL. 46.

---

## GREER v. TURNER.

1. APPROPRIATION OF PAYMENTS.

Where a debtor owes to the same creditor two distinct debts, one of which is secured by a mortgage of real estate, and the other by a mortgage upon a growing crop, the proceeds of the mortgaged crop that come to the creditor's hands must be applied to that debt which the crop mortgage was made to secure. No specific appropriation is required at the time such proceeds are received in order to fix the rights of the parties. By the terms of the mortgage they have agreed in advance how the proceeds shall be disposed of; and neither party can, without the consent of the other, change the appropriation.

2. BILL OF REVIEW: *Essentials of.*

A bill of review for newly discovered testimony should set forth the names of the witnesses, and the substance of what each witness will swear; also, how and when the plaintiff first came to a knowledge of the new matters alleged; the means, if any, that were used to keep him in ignorance, and that he was not negligent in failing to discover and produce the evidence at the former trial.

Greer v. Turner.

APPEAL from *White* Circuit Court, in Chancery.
Hon. M. T. SANDERS, Circuit Judge.

*Clark & Williams* and *W. R. Coody* for Appellant.

The history of this litigation appears in *31 Ark., 429*, and *36 Id., 17*. In the latter case this court reversed the decree and remanded the cause, with directions to refer it to a master to ascertain the value of the thirty-three bales of cotton, and whether Watkins owed Greer & Baucum any other debt except the Dougan debt; if so, what amount, and whether the parties or either of them had made any appropriation of the proceeds.

The question of Watkins' indebtedness to Greer & Baucum was not determined below, and this court is left to determine it for itself. The complaint alleges and ·the answer admits the receipt of the thirty-three bales, and the question is: Was there any debt due by Watkins to Greer & Baucum, and was this cotton appropriated by the parties to its payment?

Watkins himself admits that he was indebted to Greer & Baucum more than the cotton was worth, and his mortgage proves it in the most solemn manner. The mortgage itself was an appropriation to pay that particular debt, and neither party could change it without the consent of the other. The appropriation being complete, Greer & Baucum need not have made the application by actual credit at time of delivery, but might do so at any time before final settlement. *38 Ark., 196*. The law forced its appropriation to the mortgage debt, and would compel such appropriation if refused. *2 Jones on Mort., secs. 905–6–7–8–9–10*.

*U. M. & G. B. Rose* for Appellant.

1. The decree is manifestly erroneous, because it is wholly based on a claim not made in the complaint. It was not rendered on either of the two items for which this suit was brought,

the allowance for taxes, repairs, etc., and the forty-one bales of the crop of 1874, but for the value of the thirty-three bales of cotton of the crop of 1873, which was not alluded to in the bill of review. *95 U. S., 283; 4 Saevy, 382.*

2. The demurrer to the complaint should have been sustained. A bill of review is only a petition for a new trial in chancery, and should set out the names of the witnesses and the facts to be proved; due diligence; that the facts newly discovered have come to his knowledge since the trial; that the evidence is not cumulative. *2 Ark., 33; Ib., 133; Ib., 346; 11 Id., 671; 17 Id., 100; 2 Wall., 94; Story Eq. Pl., sec. 414; 6 B. Mon., 340; 5 Lea, 170; 5 Id., 283; 1 Heisk., 754; Hand., 346, 455; 3 How. (Miss.), 293; 15 Ohio, 318; 2 Tenn. Chy., 705; 58 Ind., 418; 3 Johns. Chy., 126; 26 Ark., 603; etc., etc.*

*J. W. House* and *J. M. Moore* for Appellee.

Even if the bill be purely and only a bill of review, as contended by counsel, want of leave to file it appearing on its face is not cause for demurrer. There is no such cause of demurrer in our practice, and the objection can be made only by motion to strike the bill from the files. *Webster v. Diamond, 36 Ark., 539.*

The second, third and fourth assignments, want of diligence in discovering Greer's frauds, failure to file affidavit of witnesses in the newly discovered evidence, and that the evidence was cumulative, must also fall for the same reason, even if there were any merit in them. They are all only necessary in order to obtain leave to file the bill. *Story Eq. Pl., secs. 412, 413, 414; Adams Eq., 770, 771.*

And if the failure to show leave to file the bill can be availed of only by motion, *a fortiori* must the grounds for the leave fall within the same rule.

But if want of diligence be cause for demurrer in any case, what diligence could be claimed of the appellee in this case? The bill charges and the demurrer admits that the plaintiff had no knowledge, information, suspicion or belief that Greer had been paid the repairs and taxes which had been allowed to him in the decree, or that he had received and not credited to Watkins the proceeds of the crop of 1874, until after the affirmance of the decree by this court. And to require a party to use diligence in discovering facts of which he never heard and never conceived or suspected to exist, would be absurd. *Reed v. Harvey, 23 Ark., 44; Davis v. Tileston, 6 How. (U. S.), 114; Gardner v. Bowling, 12 Gill & John., 365; U. S. v. Samperyac, et al., Hemp., 118; 2 Pomeroy Eq. Jur., sec. 917 and note 3.*

In *United States v. Samperyac,* on page 131 the court says: "In the case of a bill of review for new matter recently discovered, no laches or neglect can, we think, be properly imputed to the party filing the bill."

" It is allowed only on the ground of his ignorance of the existence of the new matter before the decree."

In the case at bar the answer and demurrer not only admit the plaintiff's ignorance of the new matter, but the demurrer admits also the charge in the bill that the allowance was obtained by the fraud of Greer.

Counsel in their demurrer, and also in their argument on the facts, assimilate the new bill to a motion for a new trial, and insist that it is founded on cumulative evidence and therefore cannot be sustained.

Now it is manifest that the bill seeks no new trial of any issue that was ever in the case, and neither offered nor was supported by cumulative evidence. In the supplemental case the plaintiff had sued Greer & Baucum for the rents and profits of the lands. They, in effect, set off the taxes and repairs against the claim for rents. No replication or proof that they

had been repaid by Watkins was made to this claim, for the repayment, as is admitted by the demurrer and the answer, was unknown and never suspected by the plaintiff; and so the fact of repayment was never put in issue, nor a single word of testimony adduced on it. How then can this be a bill for new trial of a fact never in issue before, to be sustained by cumulative evidence of a fact to which no evidence was ever before adduced?

To the contrary, the bill seeks to make the issue which, from the plaintiff's admitted ignorance of the fact and the fraudulent concealment of it by Greer, he had not made before, and to prove it by evidence that, it is admitted, he never heard of until after the affirmance of the decree by this court.

The objection that the bill does not show that that part of the decree sought to be corrected was final, is untrue in fact. It does show it beyond doubt or cavil.

·So far we have treated the bill as the counsel have, as a bill of review; but though called a bill of review, it is not so in the sense the counsel have regarded it—not so for the purpose of obtaining a rehearing on any fact ever before in issue; but it is an original bill in the nature of a bill of review, to impeach the allowance to Greer in the former decree for fraud, and needs no leave to file, and is not subject to either motion to dismiss, or demurrer, for any of the causes assigned by counsel. *Webster v. Diamond, supra; Story Eq. Pl.,* sec. *426; 2 Danl. Ch. Pl. & Pr., 1584; Mit. & Tyler Pl. & Pr., 190; Adams Eq., 775.*

This is a much stronger case than *Webster v. Diamond, supra,* for in that the parties had some suspicion and belief of the fraud before the decree, but in this there was none.

SMITH, J. In the original cause between these parties, reported in *31 Ark., 429,* under the style of *Turner v. Watkins, et al.,* it was determined that Turner, by virtue of his redemption as a judgment creditor from the purchaser at execution

sale, had become the owner of the equity of redemption in the Searcy Landing plantation, on Little Red river, subject to a debt secured thereon by deed of trust in favor of one Mrs. Dougan and afterwards assigned to Greer & Baucum ; and that upon the payment of said debt, of which a tender had been previously made, Turner's title should be quieted ; but that he was not entitled to the rents for the year 1873.

On the return of the mandate to the circuit court, Turner filed a supplemental bill, charging that, towards the end of 1873, Greer & Baucum had obtained possession and control of the lands, and had for several years taken the rents and profits, and had, moreover, received from Watkins a large amount of cotton and other produce which was applicable to the Dougan debt, and which if so applied would, with the aid of the annual rents, overpay that incumbrance. The prayer was, that, as mortgagees in possession, they might be held to an account.

In their answer to this bill Greer & Baucum admitted the receipt of thirty-three bales of cotton of the crop of 1873, but claimed to have appropriated the proceeds to another debt which Watkins owed them for advances and plantation supplies. The circuit court found that there was no other debt besides the Dougan debt to which the cotton might be lawfully appropriated. But as this finding was made before the reference to a master, who was directed to take and state an account between the parties, and as Greer & Baucum were thus cut off from proving their debt and the appropriation of the cotton to its payment, this court reversed the decree and remanded the case, with directions to refer it again to a master to ascertain and report the value of the cotton and whether or not Watkins then owed Greer & Baucum any other debt except the Dougan debt, and if so to what amount, and whether the parties, or either of them, had made any appropriation of the proceeds. Allowances were also made to the extent of $1473.31 to Greer & Baucum for taxes, repairs and improvements, to be deducted out of the rents. And other specific directions were given for

Greer v. Turner.

restating the account, leaving open nothing except so much of these thirty-three bales, less the taxes for 1872 and 1873, as Greer & Baucum might not rightfully have appropriated to some other debt. For a more particular statement of the matters and things involved in the supplemental suit and of the results arrived at, see *Greer v. Turner, 36 Ark., 17.*

Upon the remanding of the cause Turner filed a bill of review. It alleged that in 1869 Watkins had executed a deed of trust on the lands in controversy, conveying them to a trustee for the purpose of securing a debt due to Sallie E. Dougan. Plaintiff afterwards recovered a judgment against Watkins, under which he had the lands sold, buying them in himself, and getting a deed from the sheriff. In the meantime Mrs. Dougan had assigned the debt secured by the deed of trust, and Greer & Baucum had become the owners thereof. The trustee was about to sell, when the plaintiff tendered the amount due on the debt secured by the trust deed. Plaintiff then filed a bill in the court below, asking for an injunction to prevent the sale. On a final hearing in that suit the bill was dismissed, on the ground that after the making of the deed of trust Watkins had no such interest in the lands as was subject to execution; but that decree was reversed in this court. After that the plaintiff filed a supplemental bill in that cause, in which he charged that Greer & Baucum, claiming under the deed of trust, had had possession of the land for many years, during which they had received a large amount of cotton from Watkins, and were liable for rents of the lands, all of which should be credited on the debt secured by the trust deed. Greer & Baucum answered the supplemental bill, admitting that they had received thirty-three bales of cotton in 1873, but saying that they had applied their proceeds to the payment of other debts due them from Watkins; claiming also certain sums that they had paid for repairs, taxes and improvements. On a final hearing the court decreed to the plaintiff the sum of $2520.25. Both parties appealed, and the decree below was

reversed as to some of the matters in controversy; but it was affirmed as to the allowances made to the defendant. After stating these matters of inducement, the bill proceeds to show grounds for the review of so much of the former decree as was affirmed by this court. The bill asserts, on information and belief, that the charge for taxes, repairs and improvements had been settled by Watkins; that after Greer & Baucum took possession of the lands, they received from Watkins forty-one bales of cotton, of the value of $3000, which they had sold, and of which Greer had received the proceeds. This was in the fall and winter of 1874. The bill stated also, that these proceeds have never been applied to the Dougan debt, or to any other debt due from Watkins; that Watkins had paid off the entire debts due to Greer & Baucum, and to Greer, and that the latter had never accounted for the proceeds of the forty-one bales of cotton. Plaintiff had no knowledge, infor- mation or belief that Greer & Baucum had received and had not accounted for the forty-one bales; he had never heard that they had the cotton or its proceeds, and he had no knowledge, suspicion, or belief, that the items for repairs, taxes and cotton press had been charged to and wholly paid by Watkins until the final decree had been rendered in the supreme court affirm- ing the allowances claimed by Greer: though Greer knew at the time of claiming them that they had been settled by Wat- kins. Prayer that the decree as to said allowances be reviewed, and that they be set aside; that an account be taken of said cotton, and of the payments made by Watkins, which should be credited on the Dougan debt; that the proceeds of the cotton, and all other produce and money delivered or paid by Watkins be credited on said debt; and for all other proper relief.

A demurrer was filed to the complaint, and was overruled.

Greer, in his answer to the bill of review, denies that the sums allowed in this court for taxes, repairs, etc., had been

previously paid by Watkins. He admits that Greer & Baucum received from Watkins forty-one bales of cotton, of the crop of 1874, but says that the proceeds were applied to the payment of debts due from Watkins to them, leaving a balance due them, after deducting the credit, of more than $6000—as shown by a final settlement between them, and evidenced by a memorandum in writing. He denies plaintiff's ignorance of the fact that Greer & Baucum had received Watkins' entire cotton crop for 1874; and denies that the plaintiff is in possession of any additional information on this or any other subject connected with the litigation, since the rendition of the decree which it is sought to re-open and re-investigate. He further alleges that he tendered to the plaintiff, on the 17th day of August, 1882, $1552, in full discharge of the decree rendered by this court, and upon its refusal he deposited the money in bank, with notice to the plaintiff, where it still remains, and he offers to pay the same into court. This answer was filed August 6, 1883.

After the court had decided that the allegations of the bill were sufficient to maintain a review upon, the two suits were properly treated by the court and by the parties and their counsel as one; the parties being the same, and the issues very similar. To prevent confusion, a formal order of consolidation should have been entered. *Mansf. Dig., sec. 5018.* The mandate of this court in the supplemental suit, and the bill of review, with the issues joined therein and the testimony in both cases, were submitted to the circuit court as one and the same case. The court disallowed the claim of the plaintiff as to the taxes and repairs, but found that Greer & Baucum, during the winter of 1874–5, had received from Watkins forty-one bales of cotton, the proceeds of which were never applied to the payment of any debt due from Watkins to them, or either of them. It therefore rendered an interlocutory decree against them for the cotton, and referred it to a master to ascertain the value thereof, and also the matters that still remained open

and unsettled in the supplemental suit.   The master's report showed that the Dougan debt was nearly extinguished by the application of the proceeds of the thirty-three bales of cotton and rents of 1874; and that by the rents of 1875, 1876 and 1877, with interest computed thereon from the time they were received to the date of filing his report, the debt had been over-paid by the sum of $4454,04.   Both parties alleged exceptions, Greer & Baucum insisting that the master had erroneously charged them with the thirty-three bales of cotton, and had failed to report the debt due by Watkins to them at the time the cotton was received; and Turner insisting that the cotton was undervalued.   The circuit court overruled all exceptions and decreed in accordance with the findings of the master.   And both parties have appealed.

The master and the court below having lost sight of the principal thing for which the supplemental cause was sent back to them, viz: the ascertainment of the existence and extent of any indebtedness which Watkins might have owed Greer & Baucum when the crop of 1873 was delivered, we are left to determine these facts for ourselves.   But there can be no substantial controversy on this subject.   Greer & Baucum were merchants, trading at Searcy, in 1873.   Watkins was cultivating the Searcy Landing place, and drawing his plantation supplies from them.   Watkins owed them about $2000 on this account, before any of the cotton was received.   The master has found the value of the cotton, after deducting the taxes for 1872 and 1873, as directed by this court, to be less than $2000.

1. Appropriation of payments.

Then as to the actual appropriation: The account books of the firm have been destroyed by fire; and only three witnesses are produced who were in a situation to know anything of the transaction.   Of these, Greer has always said that the appropriation was made to the supply debt.   He was the bookkeeper, and kept up his dealings with Watkins after the disso-

lution of the firm, and was most likely to know and remember the circumstance. Moreover, it was the plain interest of the firm to make this application, for the Dougan debt was amply secured by the lands. Baucum also thinks that the cotton was applied to the supply debt, though, testifying at a long distance of time and his connection with the firm having been shortly afterwards severed, he will not undertake to swear that he has seen the entry of credit on the books. Such would have been the natural course of business and such was the habit of the firm. Watkins cannot say of his own knowledge whether or not the credit was placed on his supply account, but he evidently believes that it was not.

But in this matter we are not left to depend on the uncertain and fallible memory of witnesses, deposing to transactions which have almost faded from their minds. On the 4th of November, 1873, Watkins executed to Greer & Baucum a mortgage upon this identical crop of 1873. This instrument recites that Watkins is indebted to Greer & Baucum in a sum estimated at $2000; that Turner, claiming to stand to him in the relation of a landlord, has attached his crop for rents, and that in order for him to retain possession it was necessary to give bond; and it conveys to Greer & Baucum the whole of that crop, including eleven bales which had been already ginned and stored in the warehouse of Greer & Baucum, and it binds Watkins to deliver at their warehouse the residue of said cotton crop to secure the payment of his indebtedness to them and also to indemnify them as sureties upon his retention bond in the attachment proceedings. Watkins says that he delivered these thirty-three bales under that mortgage. The attachment suit was afterwards defeated.

Now, here was a specific appropriation, setting apart and designation by act of the parties. It was not necessary for Greer & Baucum to proclaim from the house-tops, as each bale of cotton was sold in the market, that they applied the pro-

ceeds to Watkins' mortgage for supplies, nor to do any other act in order to fix their rights. But the law would compel their application to the purposes to which the parties had destined them by their solemn agreement, and neither party could have changed the appropriation without the consent of the other.

Upon the bill of review the decree was against the plaintiff as to the allowances for taxes and repairs; but as he failed to except to the action of the master in charging Greer & Baucum with the net rents alone, after the deduction of these allowances, we are not called upon to scrutinize this part of the decree very closely. However, we desire to decide the case upon the merits. Let it be remembered that it is Turner who alleges that these items had been previously charged to and settled by Watkins. The burden is accordingly upon him to show it. Now his sole witness upon this point is Watkins, who thinks that he paid the taxes for 1872 and 1873, or that, if Greer & Baucum paid the same he refunded the money. But he admits his mistake in supposing that the taxes of the subsequent years were charged to him. He had once labored under a contrary impression. But an examination of his books and accounts had revealed the error. No taxes for those years appeared to have been charged up to him.

Then the double charge for the taxes of 1872 and 1873 is totally immaterial so far as Turner is concerned. We mean to say that it cannot possibly affect Turner whether Watkins, or Greer & Baucum, paid those taxes; nor whether if paid by the latter they have been twice repaid—once by Watkins and again by allowance of this court. For what is Turner's interest in the premises? Plainly this, and no more—that those taxes should be paid by those who were enjoying the current rents and profits, so that they might not become a charge upon his lands. But this is effectually provided for by the decree, which directs that they be paid out of the products of the farm in 1873—the thirty-three bales of cotton—a fund upon which he

has no claim. So it is difficult to see how Turner could have been injured by any dealings between Greer & Baucum and Watkins in regard to the taxes of 1874 and subsequent years, even if the facts had been as he alleged, which as we have seen they were not. Turner was then the owner and we have given him the rents for those years. It was his duty to pay the taxes. and that duty the decree enforced by awarding him the net. rents, after the taxes were deducted. He cannot complain that he has been required to pay the taxes upon his own lands. If Greer has been twice paid that is a matter between him and Watkins. Certainly Turner has only paid once.

The master took no testimony and made no report as to the. value of the forty-one bales of cotton of the crop of 1874; nor did the court make any final decree against Greer & Baucum for its value. This item seems to have dropped out of the account by some sort of mutual understanding. Perhaps the claim to have the proceeds of this lot of cotton applied to the Dougan debt, in exoneration of the plaintiff's lands, was abandoned as untenable; the proof showing that Watkins was largely indebted to Greer & Baucum for advances and supplies during the year 1874. But in truth the bill of review should have been dismissed upon demurrer. Such a bill lies only for two causes—error apparent on the face of the decree, without regard to the evidence upon which it was rendered; and newly discovered testimony.

As no error of law was alleged, the object of the bill must have been to obtain a review of the decision upon a matter of fact, on new evidence which has come to light since the decree, and which could not possibly be had or used at the time when the decree passed. *Evans v. Parrott, 26 Ark., 600.*

Now the bill does not aver that any such evidence has been discovered. And certainly none has been produced of such a controlling and decisive character as to change the result upon a new hearing. But the new matter must be so stated in the

bill that the court may, upon demurrer, determine its character, and not be left to judge of its sufficiency upon consideration of the additional testimony, taken in connection with the evidence in the original cause. Some of the cases go to the extent of holding that the new evidence should be in writing, such as a release or a receipt. But undoubtedly, if it is oral evidence, the names of the witnesses should be stated, and what each one will swear; just as in an application for a new trial in an action at law, when it is based on this ground. The bill should also show how and when the plaintiff first came to a knowledge of the matters alleged, and the means that were used, if any, to keep him in ignorance, and that he has not been guilty of negligence in failing to discover and produce it at the former trial. No fact was alleged that the plaintiff might not have ascertained before by inquiry of Watkins, one of the defendants to the suit. The very same matters were in issue, or might have been proved at the former trial. The allowances for taxes and repairs were in fact contested; and the receipt and application of the forty-one bales of cotton might have been investigated under the averment in the supplemental bill that " Greer & Baucum had received a large amount of cotton and other produce from said Watkins which should be credited upon said mortgage debts," (meaning the debts secured by thé Dougan trust deed.) Consequently, if the newly discovered facts were of any consequence to the plaintiff, he had shown no sort of diligence in the preparation of the former case for hearing.

The decree of the White circuit court is reversed ; the bill of review is dismissed at the cost of the plaintiff; and a judgment will be entered here against Greer alone for $1790.93, the excess of the rents he has received over and above the Dougan debt, according to the account herewith stated. This includes interest down to date on the overpayments. There is no proof that Greer made the tender of $1552 on the 17th of August, 1882. The effect of such tender, if it had been proved, would

be to stop interest thereafter. Consequently the only tender is that by his answer of August 6, 1883, and the amount was too small by reason of the interest which had in the meantime accrued.

All costs, after the filing of the mandate in the circuit court, including the master's fee, must be taxed to Turner, all prior thereto to Greer.

### G. B. GREER, IN ACCOUNT WITH B. D. TURNER.

| | | |
|---|---|---|
| To net rents, 1874 | $1,229 | 32 |
| To net rents, 1875 | 1,204 | 00 |
| To net rents, 1876 | 1,544 | 53 |
| | $3,977 | 85 |
| CR., By Dougan debt | 3,536 | 00 |
| Dec. 31, 1876, Balance due | $ 441 | 85 |
| Interest to February 20, 1886, at 6 per cent, 9 years, 1 month, 19 days | 232 | 96 |
| Rent warehouse and ferry for 1877 | 750 | 00 |
| Interest to February 20, 1886, at 6 per cent, 8 years, 1 month, 19 days | 366 | 12 |
| | $1,790 | 93 |