## FAISST v. WALDO.

### Opinion delivered February 11, 1893.

1. *Appropriation of payments—Burden of proof.*

   A sold and delivered certain oxen to B, reserving title in himself until B should haul enough logs to A's saw-mill, at a stated rate per thousand feet, to pay the purchase price, together with any debt B might incur for supplies furnished by A to enable him to carry out his contract. In replevin by A to recover possession of the oxen, *held*, that, if necessary to give effect to the contract, B's earnings under the contract should be appropriated to the extinguishment of the supply account before applying them to the payment of the purchase price of the oxen; *held*, also, that the burden was upon B to show that the purchase price of the oxen had been paid.

2. *Conditional sale—Forfeiture—Demand.*

   Where a contract of sale of oxen, reserving title thereto in the vendor until paid for, stipulated that, until paid for, the oxen should be used only for the purpose of hauling logs to the vendor's mill, and, before paying for the oxen, the vendee ceased to haul logs, and was attempting to sell the oxen to be removed to another mill, *held*, that there was a forfeiture of the condition of the sale, and the vendor may bring replevin for the oxen, without proving a demand for them before. suit.

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Faisst & Co. brought suit in replevin against Waldo, to recover possession of. 25 head of work-oxen, yokes, chains, hooks etc., valued in the aggregate at about $1800. Defendant denied their ownership and right to possession of the property.

B. Faisst, one of the plaintiffs, testified : Faisst & Co. sold all the property in controversy to Waldo, the defendant, with the distinct understanding that the property was to remain ours, and that the title was not to pass to Waldo until he had paid us all he owed us. He was to pay by hauling logs to our mill. We knew nothing about cattle, and got the defendant, Waldo, to look

for and engage cattle for us, and when parties came with cattle, we would, if he wanted them, pay for them and take a bill of sale. We have all the bills of sale except one which has been mislaid. The defendant was to pay us ten per cent. more for the cattle than we gave for them, except one yoke of cattle which we bought for five dollars less than defendant had agreed to give for them, and we sold this yoke of cattle to him at the price he had agreed to pay with ten per cent. added. We never did let defendant have any money to buy cattle with, and we never agreed to let him have any. We always paid the money ourselves and took bills of sales. Defendant was to haul logs to our mill till he paid us, and if he quit work at any time before he had paid us he was to turn over all the property to us. Defendant quit work June 29, 1891, and sold the property to Thomas Kerr, one of his drivers. Defendant owed us on the property at the time he quit work, $1952.40, and still owes us that amount, which is $860.05 more than the property in controversy cost.

Another member of the firm of Faisst & Co. testified to the same state of facts.

Defendant denied that he owed plaintiff anything, or that plaintiffs reserved the title of the property until full payment as claimed.

The court refused, at plaintiffs' request, to instruct the jury "that if one makes payment on a running account, and there was no understanding as to how the payment should be applied, then in such event the plaintiffs had the right to apply the credit as they saw proper on the account," but modified the instruction by adding the following clause: "But when such credits are made at the time of payment upon a general account, they cannot claim that such payments were made upon any particular item of indebtedness on such general account."

The defendant asked, and the court gave, the following instruction: "The plaintiffs claim a judgment for possession of the cattle and other property in this action by virtue of a contract of sale of same, in which contract plaintiffs sold defendant the property upon the condition that title was not to pass to him until said property was paid for. Plaintiffs now claim that defendant has not paid for this property or any part of it. If you find from the evidence that such a contract as that claimed on the part of plaintiffs is true, then you should find for the plaintiffs; but before you can do this, the burden of proof is upon the plaintiffs first to show that such a contract was made; and if you should find that such a contract was made, then the burden of proof is upon the plaintiffs to show that defendant is indebted to plaintiffs in some amount for this identical property sued for."

Other instructions were given, not referred to in the opinion. On trial the jury found for the defendant, and judgment was accordingly entered against plaintiffs. Plaintiffs have prosecuted an appeal.

*Tom M. Mehaffy* and *Blackwood & Williams* for appellants.

1. The evidence is clear and almost uncontradicted that the plaintiffs reserved the title to the property until paid for, and the verdict is against the evidence. 30 Ark. 402; 39 *id*. 428; 42 *id*. 473.

2. The damages were excessive. There was no evidence as to damages except Waldo's, who testified that he had a contract for $6.25 a day for oxen. This was not proper evidence. The criterion is the usable value. 34 Ark. 187; 36 *id*. 260; 51 N. Y. 562; Sedg. Lead. Cases Meas. of Dam. p. 650; Cobbey on Replevin, sec. 887–8.

3. Where one pleads payment, the burden is on him to prove it. 16 Ark. 651.

4. It was error to modify the fourth instruction as to appropriation of payments. 30 Ark. 745; 44 *id.* 90.

5. A failure to properly instruct the jury as to damages is ground of reversal. 7 Exch. 407; 22 Iowa, 270; 25 *id.* 572; Proffatt on Jury Trials, sec. 341.

*Wood & Henderson,* for appellee.

1. This court will not disturb the verdict if there is any evidence to sustain it. 46 Ark. 524; 27 *id.* 592; 31 *id.* 163; 31 *id.* 196. To entitle plaintiffs to recover, they must show that the title was reserved until the property was paid for, and failure of payment.

2. The charges for the purchase of the property were among the oldest in the account, and the payments made by Waldo should have been applied to the items according to the order of their dates, beginning with the first. Applying this rule, the property was all paid for.

3. But appellants claim the right to hold the property until *all* of Waldo's indebtedness was paid, thus creating a lien or mortgage by parol contract. This cannot be done. 7 Ark. 253; 30 Ark. 359.

4. Where money is paid by a debtor on a running account, he may apply it to any item he wishes. If he fails to make the election, then the crediter may appropriate to any item he wishes, but if neither debtor nor creditor make the election, the law applies it to the earliest items until all are extinguished. 47 Ark. 111; 4 *id.* 285.

5. The burden was on plaintiffs to show both ownership and right to immediate possession. 4 Ark. 94; 11 Ark. 475; 8 Ark. 510; 16 *id.* 90; 25 *id.* 482; 37 *id.* 64.

6. The measure of damages was the market value of the use of the property, and Waldo's evidence as to what he had contracted the property for hire per day was competent. 49 Ark. 381; 41 *id.* 205, 210.

7. Appellants failed to ask the court to instruct the jury as to the measure of damages, and they cannot complain. 27 Ark. 206 ; 46 *id.* 524.

1. As to appropriation of payments.

COCKRILL, C. J. If the true state of the case, as the preponderence of the evidence indicates, is that the property in dispute belonged to the plaintiffs, and that they delivered it to the defendant, with a reservation of title in themselves, under an agreement that he was to become the owner when he had hauled enough logs to the plaintiff's saw-mill, at a stated rate per thousand feet, to pay the agreed purchase price of the property, together with any debt the defendant might incur for supplies furnished or advances made to him by the plaintiffs to enable him to carry out his contract to supply the logs, then the title would not vest in the defendant until he paid the full amount of the account he incurred in pursuance of the contract, as well as the purchase price of the property. To reach that conclusion, it is not necessary to hold that a vendor of chattels, who makes delivery to his vendee, can reserve the title in himself as security for a debt to be paid after the obligation for the purchase money has been discharged. The Supreme Court of Connecticut seems to hold that a contract to that effect constitutes a valid conditional sale, and not an equitable mortgage. *New Haven Wire Co. Cases*, 57 Conn. 352, 386, 389. If the contract in this case is found to be as in the hypothesis stated, then the intention of the parties will be carried into effect by appropriating the earnings of the defendant to the extinguishment of the supply account, before applying them to the payment of the purchase price of the property.

The general rule is that where neither debtor nor creditor makes an appropriation at the time of payment, the law applies it to the liabilities of earliest date. The reason is because that course is presumed to conform to

the intention of the creditor. *Kline* v. *Ragland*, 47 Ark.
119. If there is any particular reason for a different ap-
propriation, the rule does not apply. Thus, where cot-
ton covered by a mortgage is delivered to the mortgagee,
with authority to sell and retain the proceeds, the law
appropriates the payment to the discharge of the mort-
gage debt, because the parties have impliedly agreed in
advance how the proceeds shall be disposed of. *Greer*
v. *Turner*, 47 Ark. 17; *Fort* v. *Black*, 50 *id*. 257.
Whenever the relation of the parties or the nature
of the account or transaction between them shows that
an appropriation of payments to the earliest items of the
account would do injustice between them or fail to con-
form to their understanding or agreement, another appli-
cation is made. *Upham* v. *Lefavour*, 11 Met. (Mass.),
174; *Price* v. *Dowdy*, 34 Ark. 285.

If it be true in this case, as the appellee contends
and the appellants seem to concede, that the latter, as
vendors, could not reserve the title in themselves as se-
curity for any debt except that for the purchase price,
then the agreement of the parties that the title should
not pass to the appellee until payment of his account, as
well as the purchase price, could not have the effect the
parties intended, unless the earnings of the defendant
were first appropriated to the extinguishment of the
account. If that appropriation would conform to the
intent entertained by the parties when they entered into
the contract, and no other appropriation would, the pre-
sumption is they intended the appropriation to be made
in that way, and the law makes it accordingly. *John-
son's Appeal*, 37 Pa. St. 268. Upon that theory, the
plaintiffs' evidence, if believed by the jury, would have
established title to the property in them. In order to
prove the right of property, it was not necessary for
them to go further and show that the purchase price
had not been paid. Having shown the existence of the

indebtedness, the burden was cast upon the defendant to prove that the debt had been paid or otherwise discharged. 2 Wharton, Ev. sec. 1284 ; Lawson's Presumptive Ev. 163; *Farr* v. *Payne*, 40 Vt. 615 ; *Jackson* v. *Irvin*, 2 Camp. (Eng. N. P.), 50 ; *Bell* v. *Young*, 1 Grant's Cas. 175.

The payment was a condition, according to the plaintiffs' version of the transaction, to be performed by the defendant before the title vested in him.   But where a party is under obligation to perform an act as a condition precedent to the vesting of a right, the burden is upon him to show performance before he can assert the right.

The court charged the jury in this case that the burden was on the plaintiffs to show that the defendant was indebted to them for the purchase price of the property, and that they could not recover in the absence of such proof.   That was error.

2. As to forfeiture of conditional sale.   It is not enough, however, in replevin for the plaintiff to show that he has the right of property—he must prove the right of possession.   Upon plaintiff's own showing in this case, the defendant came lawfully to the possession of the property in suit, under his contract with them.   The burden was upon them, therefore, to show that his right to possession had ceased.   They met their obligation in that behalf by testifying that their contract with the defendant required him to use the property only under the rules and regulations of the mill, for the purpose of carrying out the contract to supply logs to the mill ; and that the defendant had ceased to carry on the work before suit, and was attempting to sell the property for the purpose of removing it to another saw-mill.   If that was true, it showed a forfeiture of the defendant's right of possession, and warranted the plaintiff's action.   *McRea* v. *Merrifield*, 48 Ark. 166.

The attitude of the plaintiffs, after they had adduced evidence to show the condition upon which the sale was made, the defendant's promise to pay, and his violation of the contract by abandoning the work, was analogous to that of a mortgagee who, in a suit against the mortgagor for possession, rests upon the evidence afforded by the introduction of his mortgage, without producing or accounting for the notes or proving that they have been paid. In that case the mortgage is said to be evidence both of title and indebtedness, and both are presumed to continue to exist until the mortgagor shows that there is no debt, and therefore no title ; if that is not shown, the right of the mortgagee to possession is established. 1 Jones on Mort. sec. 71 ; *Smith* v. *Johns*, 3 Gray, 517 ; *Powers* v. *Patten*, 71 Me. 583.

For the error indicated, the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.