## MALONE *v.* COLLINS.

### Opinion delivered March 30, 1914.

1. REPLEVIN—SALES—BURDEN OF PROOF.—Where defendant came lawfully into possession of property under a contract of sale, the burden is upon plaintiff to show that defendant's right of possession of the property had ceased, at the time a replevin suit was instituted by the plaintiff. (Page 275.)

2. WITNESSES—CREDIBILITY—QUESTION FOR JURY.—The jury is the sole judge of the credibility of witnesses. (Page 276.)

3. APPEAL AND ERROR—VERDICT OF JURY—CONCLUSIVENESS.—The verdict of a jury will not be disturbed when supported by any substantial evidence. (Page 276.)

4.  SALE OF CHATTELS—PAYMENT—RIGHT TO RETAKE.—When defendant
    purchased mules from plaintiff, an instruction is proper which
    charges that plaintiff could retake the mules, when defendant had
    no intention of paying for the same when he bought them, had
    violated the contract of sale, and was making no effort to pay
    for the same.  (Page 276.)

5.  REPLEVIN—VERDICT IN THE ALTERNATIVE—ERROR.—Plaintiff sold mules
    to defendant, retaining title, and for breach of contract replevied
    the mules, defendant filed a cross bond and retained the mules;
    held, when, under the judgment plaintiff had an absolute right to
    have the property returned to him, no prejudice resulted to de-
    fendant because the judgment was not in the alternative.  (Page
    276.)

6.  APPEAL AND ERROR—HARMLESS ERROR.—A cause will be reversed for
    error, only when the same is prejudicial.  (Page 276.)

Appeal from Monroe Circuit Court; *Eugene Lank-ford,* Judge; affirmed.

### STATEMENT BY THE COURT.

G. C. Collins brought suit in replevin against Sam Malone to recover two mules, valued in the aggregate, at $250. The defendant denied that the plaintiff had a right of possession of the property. G. C. Collins, the plaintiff, testified:

The defendant, Sam Malone, was a tenant on my place and purchased from me the mules in controversy for the purpose of cultivating his crop. He first agreed to pay me $125 each for the mules, and they were worth $250 at that time. A few days later he came back and told me that some one had told him that the mules were not worth more than $100, and I told him that, in as much as I had sold them to him to cultivate his crop, I would let him have them for $100 each. It was agreed between us that the title to the mules should remain in me until they were paid for. He was to pay for them at the end of that crop year, if possible, but I told him that if neces-sary, I would wait on him for a part of it another year. I sold him the mules for the purpose of using them on my farm and cultivating his crop, and told the defendant that I had had trouble with some negroes last year in regard to some mules I had sold to them because they

wanted to haul ties with them. I said to the defendant: "I do not propose to furnish you a pair of mules to haul ties and logs with, but I will let you have the mules to farm with." The contract was a verbal one.

On cross examination Collins was asked the following question: "You say that when you sold Mr. Malone the mules you had a definite understanding that they were to be used for no other purpose than to be used in the crop?" Collins answered: "I did not use that language. I said, 'Sam,' as I stated a while ago—I stated a bit ago about the trouble I had had the fall before, and I said, 'I do not propose to let you have mules to haul ties and logs with, but to farm with.'"

We quote from his cross examination further, as follows:

Q. Was it the understanding that if he did haul ties or logs that you could go and take the mules away from him?

A. No, sir; not at that time; nothing was said about it.

Q. There was no contract or agreement that you could take the mules from him if he did haul ties or logs?

A. They stayed my mules.

Q. There was no contract to that effect?

A. No, that was not spoken of.

Q. There was no contract to that effect?

A. I told him definitely that they were to farm with, and not to haul ties or logs.

Q. Was there any agreement to the effect that if he used them for any other purpose than farming, that you could take them away from him?

A. No, sir.

On redirect examination Collins stated that he did not replevin the mules from Malone until the latter had violated the contract of purchase, and stated that he told Malone positively that the mules must not be used for hauling, and that Malone understood the terms upon which he let him have the mules. He further stated that when Malone went to hauling ties with the mules he vio-

lated his contract. He stated that during the summer, before he had finished cultivating his crop and while the crop was very grassy, Malone quit working it and went to hauling ties with the mules; that he demanded of Malone that he quit hauling ties and go back to working his crop; that Malone refused to do this, and that he then brought this action to recover possession of the mules; that he furnished Malone with sufficient supplies to enable him to work his crop; that the mules deteriorated in value from ill use while the defendant had them in his possession, and are not now worth more than $75 each.

J. M. Collins, a brother of the plaintiff, testified:

In a conversation with the defendant about trying to get him to finish cultivating his crop, he said to me: "My crop don't stand good for the mules; they stand good for themselves." The defendant further said: "When I get the crop done, I can turn them back, if I want to, and I do not know if I won't do that, because Uncle George (referring to plaintiff) won't let me haul ties or logs with them, and I may turn them back."

The witness further stated that at the time this conversation took place the grass in the crop was eighteen or twenty inches high, and that he was trying to get the defendant to finish cultivating his crop.

The defendant testified for himself and denied that it was a part of the contract that he should not haul ties or logs with the mules; that his crop was not in the grass any more than that of his neighbors, and that he wanted to haul ties for the purpose of getting some money with which to finish cultivating his crop, because the plaintiff had refused to furnish him further; that the mules had not deteriorated in value any since he had had them in his possession.

Other evidence was adduced by defendant tending to show that the mules had not deteriorated in value, and that he had worked his crop as well as the other tenants on the farm.

The court gave the following instruction:

"Paragraph 2. If you find that the plaintiff sold the mules to the defendant, retaining title in himself, and gave him until the next fall to pay for the mules, and that the defendant went ahead and was doing his best to pay for the mules, that he was making a good faith effort to pay for the mules, then the plaintiff could not recover in this suit because the defendant would have until the next fall to pay for them, and could not bring suit in replevin for the possession of the mules until that time arrives.

"Paragraph 3. On the other hand, if you find that the defendant had no intention of paying for the mules, when he bought them, or had violated the contract and was making no effort to pay for the mules, then the plaintiff could bring this suit for the possession of the mules before that time arrives."

The court also told the jury that the burden of proof was upon the plaintiff, and gave the jury a proper instruction on the credibility of the witnesses. The jury returned the following verdict: "We, the jury, find for the plaintiff in the sum of $30 rent and for the possession of the mules." From the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Thomas & Lee* and *G. Otis Bogle,* for appellant.

1. The verdict should have been in the alternative. Kirby's Digest, § 6867.

2. The money for the mules was not due.

3. The court erred in its charge to the jury. There is no testimony that appellant had violated his contract and the action was prematurely brought.

*Jno. B. Moore,* for appellee.

1. No proper exceptions were saved to the admission of testimony. 28 Ark. 11, 12; 28 Ark. 550.

2. Where there is any evidence tending to establish an issue, it is error to take the case from the jury. 63 Ark. 94; 70 *Id.* 74.

3. The instructions asked by appellant were properly refused. 77 Ark. 136.

4. No objection to the form of the verdict was made below. 28 Ark. 188; 55 *Id.* 383; 2 Cyc. 702; 34 *Id.* 1550; 104 Ark. 375.

HART, J., (after stating the facts). It is contended by counsel for defendant that the court erred in giving the instruction marked "Paragraph 3," because, they say, there is no testimony tending to show that the contract had been violated by the defendant. They contend that, under the terms of the contract, the only condition under which the plaintiff had a right to retake the property was that the defendant should fail to pay for it. They insist that, under the testimony given by the plaintiff himself, it was not a part of the contract that the mules should be used exclusively on the farm, and that the defendant should not haul ties with them. In support of their contention, they point to that part of the testimony of the plaintiff which we have quoted in the statement of facts.

We have carefully examined the whole testimony of the plaintiff, and, while he was cross examined at length by counsel for defendant in an endeavor to show by him that the contract did not contemplate that the mules should be used exclusively for cultivating the defendant's crop and should not be used for hauling ties and logs, yet, when the testimony is considered as a whole, we do not think the contention of defendant's counsel is sustained. The plaintiff says over and over again that, while the negotiations for the sale of the mules were pending between them, he stated to the defendant that he had had trouble the year before with his tenants using mules that had been furnished them to cultivate the land, for the purpose of hauling ties and logs, and that he told the defendant that he would let him have the mules to farm with, but did not propose to furnish him a pair of mules with which to haul ties and logs. He also stated that the defendant understood the terms under which he let him have the mules.

The defendant came lawfully into possession of the mules under the contract of sale to him by the plaintiff;

therefore, the burden of proof was on the plaintiff to show that the defendant's right of possession of the mules had ceased at the time the replevin suit was instituted by him. The jury, however, were the judges of the credibility of the witnesses, and it is our duty to sustain a verdict, if there was any substantial evidence to support it. We think the jury might have fairly inferred from the plaintiff's testimony that the plaintiff's contract with the defendant required the latter to use the property in the manner provided in the contract; that is to say, until the defendant had paid for the mules under the terms of the contract, as testified to by the plaintiff, he had the right only to use them for the purpose of cultivating his crop, and did not have the right to use them for the purpose of hauling ties and logs. See *Faisst* v. *Waldo,* 57 Ark. 270. It will be noted that the court told the jury in instruction marked "Paragraph 3," that if it should find that the defendant had no intention of paying for the mules when he bought them, the plaintiff had a right to bring this suit. The evidence adduced by the plaintiff tended to show that, at the time the defendant quit working his crop and went to hauling ties, his crop was very grassy and badly in need of cultivation. It is true the defendant testified that he was hauling the ties for the purpose of securing money with which to hire hands to work his crop because the plaintiff had refused to furnish him any further, but, on the other hand, the plaintiff denies that he had refused to furnish him, and his testimony tends to show that the defendant had voluntarily abandoned his crop and left it in the grass. The plaintiff's brother testified that the defendant had told him that there was no lien on the crop to secure the payment of the purchase money of the mules; that the mules stood good for themselves, and that he was at liberty to turn them back to the plaintiff, if he so desired, and that he might do so because the plaintiff would not let him haul ties and logs with them. Under these circumstances, the jury might have found that he had no intention of

paying for the mules, and that the plaintiff was justified in retaking them on that account.

We think that the case was submitted to the jury on proper instructions, and, under the settled rules of this court, there being evidence of. a substantial character to support the verdict, it can not be disturbed on appeal.

Again, it is insisted by counsel for defendant that there was error in the form of the verdict. They claim that it should have been in the alternative, and that for this reason the judgment should be reversed. The record shows that when the plaintiff instituted this suit he gave bond to obtain possession of the mules. The defendant filed a cross bond and retained the possession of the mules.

In the case of *Bilby* v. *Foohs,* 90 Ark. 297, the property was delivered to the plaintiff at the institution of the suit, and the defendant then became the one seeking the return of the property. Upon a judgment being rendered in his favor, he had an absolute right to have the plaintiff restore the property to his possession. The court held that no prejudice, therefore, could have resulted to the plaintiff in that case from the failure of the court to render an alternative judgment against him, and, for that reason, refused to reverse the judgment.

So, here, the facts are that the property is now in the possession of the defendant, and, under the judgment rendered, the plaintiff had the absolute right to have the property returned to him. Therefore, no prejudice could result to the defendant because the judgment was not in the alternative; and it is settled that this court only reverses for errors that are prejudicial to the rights of the party appealing.

There was evidence tending to show that the mules had been damaged to the extent of $50, and the amount found as damages is therefore supported by the evidence.

It follows that the judgment must be affirmed.