TIPTON v. JONESBORO GROCER COMPANY.

Opinion delivered December 8, 1924.

1. PAYMENT—APPROPRIATION.—Where a supply company transferred cotton receipts as security for an open account, this amounted to an appropriation in advance of the proceeds thereof, when sold, to the payment of the open account, and it would require the consent of both parties to the transaction to change the appropriation to secure notes instead of the open account.

2. PLEDGES—MEASURE OF DAMAGES FOR CONVERSION.—Where cotton receipts were deposited with plaintiff as security for an open account, if plaintiff sold them without authority, the measure of damages in a suit against it for an accounting would be the market value of the cotton at the time of the conversion.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Judge; affirmed.

*Kenneth Rayner,* for appellant.

A debtor has the right, in the first instance, to appropriate the payment made to any debt which he may owe. 174 S. W. (Ark.) 553; Cyc. 1228. See also 54 Ark. 446. Appellee held the cotton as a pledge, subject to all the duties and liabilities of a pledgee. The sale should have been at public auction after due advertisement. 250 S. W. 321 (Ark.) and cases cited, especially 95 Ark. 542. Appellee, under the circumstances shown, took the cotton impressed with a trust. Vol. 3, Pom. Eq. Jur. (3d ed.) p. 2015, § 1048 (3).

*Horace Sloan,* for appellee.

Appellant had no power to demand as a matter of right that the cotton receipts be changed as security from the open account to the notes. After the petition in bankruptcy had been filed, the change could not then have been made, even with appellee's consent. 103 Ark. 473; 57 Ark. 270; 49 Ark. 508; 47 Ark. 17; 98 Ark. 459. The unauthorized sale, if any, was ratified by appellant. 21 R. C. L.; p. 692, § 52. The cotton brought the market value, and that is all appellant can contend for. 92 Ark. 472. Assuming that the appellants owned the equity in the cotton, they could not be subrogated against

the appellee for amounts credited by appellants on customers' accounts of the Farmers' Supply Co. 148 U. S. 573, 37 Cyc. 374.

HUMPHREYS, J.  Appellee filed suit against appellant in the chancery court of Craighead County, Western District, upon three promissory notes.

An answer and cross-complaint thereto, presenting equitable defenses and counterclaims, were filed by appellants, to which appellee filed a reply, whereupon the case was transferred to the chancery court of said county.

The cause was heard by the chancery court upon the pleadings and testimony adduced, which resulted in a decree against appellants upon notes, including interest, for $3,748.34, with interest thereon at the rate of 10 per cent. per annum from the date of the decree, from which is this appeal.

In order to decide the controlling questions presented by this appeal, it is only necessary to set out a summary of the evidence, and in doing so we will follow, in part, the statement of the facts prepared by appellant.

The Farmers' Supply Company was a corporation of Manila, Arkansas, whose stockholders were Joe Horner, Jake Rice, C. W. Tipton, Joe Benson and E. W. Pierce. On the 25th day of May, 1921, the Farmers' Supply Company was duly adjudged a bankrupt in the United States District Court for Jonesboro Division of the Western District of Arkansas.. Appellants purchased its assets, including its notes and accounts.

Prior to the bankruptcy of this concern, it had been buying considerable merchandise from Jonesboro Grocer Company, appellee herein.  In 1920, Jonesboro Grocer Company began to exact promissory notes from Farmers' Supply Company for its prior purchases of merchandise, requiring that additional security be given on the promissory notes by having certain individual stockholders of the corporation sign the notes as such securities, along with the corporation itself.  The first of these notes was executed June 1, 1920, in the principal sum of $1,452.95, due November 16, 1920; the second on March 3, 1921, in

the principal sum of $453.23, due June 3, 1921; the third on April 15, 1921, in the principal sum of $1,026.70, due on November 15, 1921; each of the said notes bearing interest at the rate of 10 per cent. per annum from date. The notes were signed by appellants.

The Farmers' Supply Company had accounts against various farmers in the neighborhood for goods furnished them. To secure payment of these accounts, this concern had received, as collateral from the debtors, certain bales of cotton in which the debtors had equities. Warehouse receipts covering the cotton were issued to the debtors and by them delivered to the Farmers' Supply Company.

Some time prior to March 29, 1921, the Farmers' Supply Company delivered to Jonesboro Grocer Company this cotton and the warehouse receipts covering same, but not the accounts of the debtors, as collateral for the account then owing by it to Jonesboro Grocer Company. Jonesboro Grocer Company acknowledged receipt of the warehouse receipts covering the cotton. On these receipts the names of the owners of the cotton were noted. As stated, this took place before the bankruptcy proceedings. The bales of cotton in controversy numbered twenty-nine.

According to the testimony introduced by appellants, in May, 1921, before the institution of the bankruptcy proceedings above referred to, Farmers' Supply Company, then owing Jonesboro Grocer Company the three notes as set out above, as well as the open account in addition thereto, C. W. Tipton, president of the Farmers' Supply Company, instructed Ashley Sale, manager of the Jonesboro Grocer Company, that, upon sale of the cotton by the pledgee of the cotton posted as collateral with it, the proceeds thereof should be applied on the indebtedness due pledgee by Farmers' Supply Company, as evidenced by the three promissory notes referred to, to which Sale agreed; that this instruction was later reiterated by Tipton and Rice, Rice being another stockholder in Farmers' Supply Company, while the cotton

was still held as collateral by Jonesboro Grocer Company. According to the testimony introduced by appellee, Sale refused to grant the request.

After the bankruptcy proceedings had been instituted, Jonesboro Grocer Company sold the cotton which had been posted with it as collateral, at private sale, under the advice and consent of the trustee in bankruptcy. The cotton was never advertised for sale. The total sale price of the cotton, sold under the circumstances as stated, was $1,173.30, representing $.058 per pound, net, and was a fair market value for the cotton at the time it was sold. This entire sum was credited on the open account of Farmers' Supply Company, none of it being credited on the indebtedness evidenced by the promissory notes.

Farmers' Supply Company accounted to the owners of the cotton from which it had originally received same, at 12 cents per pound for their equities in same. This is declared to have been a fair market price for the cotton.

The first question arising for determination on this appeal is whether C. W. Tipton, president of the Farmers' Supply Company, had a right to demand that the warehouse cotton receipts, which had been pledged by it to appellee as collateral security for an open account, should be sold and applied on payments of notes which he and other stockholders of the Farmers' Supply Company had theretofore executed to appellee. There is a dispute in the testimony as to whether the warehouse cotton receipts were originally pledged to secure the open account, but the chancellor found that they were, and appellants themselves proceed in their argument upon the theory that the finding is supported by the weight of the evidence. Appellants could not, as a matter of right, demand that the cotton receipts be changed as security from the open account to the notes. The transfer of said receipts as security for the open account constituted an appropriation in advance of the proceeds thereof, when sold, to the payment of the open account, under the law of the application of payments, and it would require

the consent of both parties to the transaction to change the appropriation. *Greer* v. *Turner*, 47 Ark. 17; *Caldwell* v. *Hall*, 49 Ark. 508; *Atkinson* v. *Cox*, 54 Ark. 446; *Faisst* v. *Waldo*, 57 Ark. 270; *Bonham* v. *Johnson*, 98 Ark. 459; *Kissire* v. *Plunkett-Jarrell Grocer Co.*, 103 Ark. 473. It is contended, however, by appellants that appellee consented to change the appropriation of the proceeds from the cotton receipts, when sold, from a payment upon the open account to a payment upon the notes. The testimony is in sharp conflict upon this point, and, after a careful reading thereof, we are of opinion that the finding of the chancellor to the effect that appellee never agreed to such a change is supported by the weight of the evidence.

Other questions are raised and argued by appellants as grounds for a reversal of the decree, viz., that they were the owners of the equity in the cotton, after paying the open account, by virtue of having purchased the notes and accounts of the Farmers' Supply Company at the bankruptcy sale, and, by way of subrogation, to the rights of the original owners of the cotton; that the sale of the cotton was void because privately made and without notice to appellants, etc. It is unnecessary to decide these questions, because, according to the undisputed testimony, the cotton was not of sufficient value at the time it was sold to satisfy the open account for which it had been pledged. Treating, but not deciding, the sale as void, and appellee as a tort-feasor for selling same, the measure of damages in a suit against appellee for an accounting would have been the market value of the cotton at the time of the conversion. *Hamburg Bank* v. *George*, 92 Ark. 472. The weight of the evidence was to the effect that the cotton was sold at the best price obtainable upon the market. No surplus remained, as the proceeds were insufficient to pay the open account.

No error appearing, the decree is affirmed.