FORD HARDWOOD LUMBER COMPANY *v.* BRYANT.

Opinion delivered January 7, 1929.

*John E. Swepston, W. G. Riddick* and *Chas. T. Coleman,* for appellant.

*Berry, Berry & Berry,* for appellee.

MEHAFFY, J. The appellant brought suit in the Crittenden Circuit Court in replevin against the appellee, alleging that it was the owner and entitled to the immediate possession of certain horses, mules and camping and logging outfit, located near Louise, Arkansas, of the value of $2,500, and asked for judgment for said property and damages for its detention. The affidavit alleged the value of the property to be $2,500, and alleged that plaintiff was the owner and entitled to possession by reason of a chattel mortgage recorded in Crittenden County, Arkansas, on the 26th day of November, 1924, in which the appellee had conveyed the property to plaintiff to secure a note for $5,000.

The appellant executed bond, and the writ of replevin was issued, and property delivered to the appellant.

Appellee answered, denying the material allegations in appellant's complaint, and alleged that appellant failed to furnish him an itemized statement of his account, as required by law, and that said property was taken and sold in Arkansas instead of Tennessee, as provided by the mortgage. He also alleged that appellant took possession of certain property not included in the mortgage, and alleged that he was not indebted to the appellant in any sum, but that the appellant was indebted to him in the sum of $26,614.25.

The case was transferred to the chancery court, and the appellee there alleged, among other things, that the

transactions between the parties were executed over a period beginning February, 1924, and ending in November, 1926; that, during the operations in Tennessee, the appellee delivered to appellant logs of the value of $19,692.99, and that on the 24th of August, 1924, appellee executed the note sued on and the mortgage to secure the payment of said note, but alleged that, before the termination of operations in Tennessee, he had paid all of his indebtedness, including the $5,000 note.

After the case had been transferred to the chancery court and pleadings had been filed therein, the matter was referred to a master by the chancery court, and testimony was taken, and thereafter the master filed his report, finding in favor of appellee in the sum of $5,880 damages, plus $2,810, value of the property. The damages were for wrongful detention of the property after it was taken by appellant in replevin suit.

Testimony was introduced by both sides covering the transactions between the parties, but the master only reported on that part represented by the note sued on. The master found that no account was delivered to the appellee by appellant before the institution of the suit; that the trust deed was given by defendant to secure the sum of $5,000 of indebtedness which appellee owed appellant on August 26, 1926, and that the indebtedness at that time amounted to $9,928.80; that the $5,000 note was executed at the same time, and that the account between the parties was continued as an open account, no credit being given for the note; that the trust deed did not secure any future indebtedness. The master also found that the indebtedness secured by the trust deed was paid before the institution of the suit, and that appellant was not entitled to any of the property described in the trust deed; that appellee was entitled to judgment for the return of the property, or its value, and for damages for its detention. The master further stated that it is difficult to determine the value of the property, but he found it to be $2,660, giving a value of $120 each for the mules, $125 each for the wagons and

chains. The master fixed the value of miscellaneous items not covered by the mortgage, but taken by the plaintiff, at $150. He reported, however, that there was no testimony taken on this item, but he estimated it. He also found that the trust deed was not given to secure any particular indebtedness, but merely to secure $5,000 indebtedness of appellee.

Appellant filed exceptions to the master's report, but the court entered a decree approving the master's report and holding that the right to an ultimate accounting between the parties was not involved in the action, and the right of appellant to a set-off against the amount adjudged was not decided, and dismissed the plea of set-off without prejudice.

Appellee suggests that the questions to be decided are:

(1). Is the appellant entitled to the possession of the property?

(2). If not, what is the amount of damages for the wrongful detention?

(3). Under the pleadings and proof developed up to the time the report of the master was approved by the chancellor, can the appellant have a set-off against the appellee for the account?

The appellee contends that the appellant was not entitled to the possession of the property, first, because it failed to comply with the statute requiring the making and delivering to the mortgagor a verified statement of his account, etc. The statute reads as follows:

"Before any mortgagor, trustee or other person shall proceed to foreclose any mortgage, deed of trust, or to replevy under such mortgage, deed of trust or other instrument, any personal property, such mortgagee, trustee or other person shall make and deliver to the mortgagor a verified statement of his account, showing each item, debit and credit, and the balance due."

This court has held that the purpose of the statute is to give the mortgagor an opportunity, before suit, to pay the debt and to settle any controversy of any items

that might be in dispute without going to law. The Legislature did not have in view the matter merely of saving the mortgagor the costs that might be incident to a lawsuit. Its purpose was not only to prevent that, but also any annoyance and inconvenience he might suffer by having property taken from him by process of law before giving him an opportunity to adjust any differences with the mortgagee, and to settle his account, if possible, without a lawsuit. The burden was therefore placed on the mortgagee, as a condition precedent to the maintenance of a suit to foreclose or for possession, that he comply with the statute. He still has the right to his debt and to any other remedy provided by law for the enforcement of its payment. See *Lawhon* v. *Crow,* 92 Ark. 313, 122 S. W. 999.

This suit, as originally brought by appellant, was for the purpose of getting possession of the property described in the mortgage, in order that it might be sold to pay the note secured by the mortgage. The appellant did not sue on any account, did not seek to recover any other indebtedness, but sought simply to replevin the property for the purpose of selling it to pay the $5,000 note. This court has said:

"Does this statute require a sworn statement of the amount of a note secured by the mortgage, as in this case, where no payments have been made thereon? We think not. Construing the statute literally, it applies only to an account secured by the mortgage; and to hold that it applies to a note, without credits thereon, would be to extend it beyond the spirit and reason as well as beyond the letter of the law. Manifestly, the Legislature intended only to require a mortgagee to furnish a verified statement of an account under the mortgage, the amount of which is or might be in dispute, so as to give the mortgagor an opportunity, before suit, to pay the debt; and not to the single item represented by a note without credits, which is fully identified in the mortgage, and about which there can be no dispute. The court therefore erred in holding that the furnishing of

the verified statement is a prerequisite to the bringing of the suit." *Perry County Bank* v. *Rankin*, 73 Ark. 589, 84 S. W. 725, 86 S. W. 279.

The statute provides for making and delivering to the mortgagor a verified statement of his account, and, as said in the case last referred to, this is not a suit on an account. It is a suit on a note on which there are no credits. The furnishing the itemized statement would simply have been a showing of the $5,000 note, and this question is ruled by the decision in *Perry County Bank* v. *Rankin*, and there was no necessity to file a verified statement of the account between the parties, because the account was not sued on.

This court again said: "The facts bring the case squarely within the rule announced in *Perry County Bank* v. *Rankin*, 73 Ark. 589, 84 S. W. 725, 86 S. W. 279, and no verified statement of account under the statute was required. It appears from the record that the chattel mortgage was given as additional security for the mortgage indebtedness. The mortgagee had a right to first foreclose his mortgage on the land, and, when it did not sell for enough to satisfy the mortgage indebtedness, to foreclose his mortgage on the chattels." *Van Pelt* v. *Russell, Admr.*, 134 Ark. 236, 203 S. W. 267.

In the above case there was a foreclosure and sale of the land, and that left a balance of the sum between the amount of the indebtedness and the amount the land sold for, and it may be said here, as there, that no useful purpose could have been served by the rendition of an account.

After the replevin suit had been begun, the appellee filed answer and cross-complaint, and brought into the case the entire accounts between the parties, and asked for an accounting, alleging that the note had been paid, and that the appellant was indebted to the appellee in the sum of several thousand dollars. And it was the contention of appellant that it was entitled to a full accounting between the parties in that suit after it had

been transferred to chancery and appellee had asked for an accounting.

Since there must be an accounting, according to appellee's contention, before it could be determined whether the note had been paid, it was the duty of the court to settle the entire matter and all disputes between the parties in the one suit. To do otherwise would require a multiplicity, or at least would require an additional suit, and the taking of the same testimony in the second suit that was taken in this; and, for that reason, a full and complete settlement should have been made, and the decree should have adjusted the rights and equities of the parties and determined all matters involved in the litigation growing out of or connected with the subject-matter thereof. It should have finally disposed of the controversy. 10 R. C. L. 370; *Short* v. *Thompson,* 170 Ark. 937, 282 S. W. 14; *McGaughey* v. *Brown,* 46 Ark. 25; *Horstman* v. *LaFargue,* 140 Ark. 558, 215 S. W. 729; *Tallman* v. *McGahhey,* 164 Ark. 205, 261 S. W. 306; *Ferguson* v. *Rogers,* 129 Ark. 202, 195 S. W. 22; and *Estes* v. *Lucky,* 133 Ark. 98, 201 S. W. 815.

The court erred in not determining the matters involved in the litigation between the parties or growing out of or connected with the suit; it should have finally disposed of the entire matter.

The doctrine as to the application of payments is stated by this court as follows:

"The general rule is that, where neither debtor nor creditor makes an appropriation at the time of payment, the law applies it to the liabilities of earliest date. The reason is because that course is presumed to conform to the intention of the creditor. *Kline* v. *Ragland,* 47 Ark. 119, 14 S. W. 474. If there is any particular reason for a different appropriation, the rule does not apply. Thus, where cotton covered by a mortgage is delivered to the mortgagee, with authority to sell and retain the proceeds, the law appropriates the payment to the discharge of the mortgage debt, because the parties have impliedly agreed in advance how the proceeds shall

be disposed of. * * * Whenever the relation of the parties or the nature of the account or transaction between them shows that an appropriation of payments to the earliest items of the account would do injustice between them or fail to conform to their understanding or agreement, another application is made.'' *Faisst* v. *Waldo*, 57 Ark. 270, 21 S. W. 436.

If it had been intended that the payments made right along after the execution of this mortgage went to the payment of the mortgage debt, it being the oldest debt, the giving of the mortgage would have been perfectly useless. The parties would be in the attitude of having the mortgage given to secure a debt which the mortgagor was paying off at the time and leaving the parties without any security, when the evident intention of the parties was to give security for at least $5,000. But the testimony in this case shows that the intention of the parties was that the payments made should not be applied on the note. The appellee himself testified that he understood that the note was not to be paid until a year. Therefore, according to his understanding, at the time he made the payments which he claims should be applied to the note, the note was not due, and the general rule in the application of payments is that they shall be applied to debts due rather than to debts not due.

It clearly appears from the testimony in this case that it was the understanding of the parties that this note was not to be paid at once, and therefore the conclusion is irresistible that the payments made were to be applied on the account and not on the note. At least, not on the note until the time when, according to the agreement of the parties, it was to be paid. This time, the appellee says, he understood to be one year. If he thought the note was not to be paid within a year, he could not have thought that these payments made before the expiration of a year were to be applied on the note.

''The account exhibited by appellees, pursuant to the request of appellants, showed a running account with

credits on it, and appellants insist that those credits should be applied to the earlier items according to the ordinary rule of application of payments on a running account, and that, when so applied, they extinguish a portion of the claim which appellees now assert. There is an explanation, however, given in the testimony of the witness to the effect that all of the contract with Shenk Construction Company had not been completed by appellees in furnishing materials when the job was abandoned by contractors, and that the items of credit were entered on the books at the time the payments were made, all of which tended to show that the credits were not intended to be applied on the earlier items as shown on the account. The rule as to application of payments on an account to the earlier items is not an inflexible one, to be enforced when contrary to the intention of the parties." *Terry* v. *Klein*, 133 Ark. 366, 201 S. W. 801.

Not only did both parties testify that the note was not to be paid at once, but the testimony also shows that statements of the account were sent to appellee from time to time, and this statement necessarily showed debits and credits, and appellee was bound to know that the payments were not being applied on his note.

Again, while appellee claims that he had paid the entire note before he moved to Arkansas, he also is positive that he secured the consent of the mortgagee before he moved the property. This itself is inconsistent with the contention that the payments were to be applied, or were applied, to the payment of the note rather than the open account, because, if his contention that these payments were to be applied to the note and that it had been paid, then, when he moved the property to Arkansas, there would have been no reason to get the consent of the mortgagee, because, according to his contention, the mortgage had been paid.

For the errors indicated the decree will be reversed, and remanded with directions to settle the entire account between the parties, and enter a decree not inconsistent with this opinion.